BROWN v. MECHANICS' & TRADERS' NAT. BANK.

(*Supreme Court, General Term, First Department.* December 29, 1890.)

PRINCIPAL AND AGENT—PRESIDENT OF BANK—AUTHORITY—RATIFICATION.

For the purpose of preventing loss of a debt due to a bank, and at the request of the debtor, the president of the bank purchased the debtor's property at foreclosure sale, and a deed was made to an employe of the bank, who conveyed to the president. The consideration was paid by a check of the president, charged to the bank in its own account: and soon afterwards the president obtained a loan on mortgage of the property, which was credited to the same account. The bank thereafter received the rent, and paid for insurance on the property and interest on the mortgage, for several years, when the president conveyed it to the bank, subject to the mortgage, for a nominal consideration. The same management of the property was continued until very nearly the time of the decease of the president, when payments were discontinued, the mortgage was foreclosed, and judgment for a deficiency was recovered, for the amount of which the executor of the president sued the bank. *Held*, that the president acted but for the bank, and it was error to find that the bank never authorized and did not ratify or adopt any of these transactions.

Appeal from judgment on report of referee.

Action by Timothy I. Brown, as executor, against the Mechanics' & Traders' National Bank of the city of New York. Plaintiff appeals from a judgment for defendant entered on trial by a referee.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*George W. Stephens,* for appellant. *Thomas J. McKee,* for respondent.

DANIELS, J. This action has been brought to recover the amount of a deficiency remaining after the sale of mortgaged premises, upon the foreclosure of a mortgage executed by the testator to secure his bond. He was the president of the defendant, and the theory of the action is that he gave the bond and mortgage for the use and benefit of the defendant, and that the defendant is equitably bound to pay this deficiency. The plaintiff gave evidence tending to prove these facts, and requested the referee to find them to have been proven, but he refused to do so, and to his refusal the plaintiff excepted. Included within these refusals are the requests to find that the defendant paid the larger portion of the purchase price of the land when the title to it was obtained; that the testator at no time held the title otherwise than nominally, and in trust for the defendant; that the title was conveyed to him to enable him to mortgage the land, and borrow the money secured, for the defendant, and in making the bond and in incurring the debt he acted for and in the interest of the defendant, and as its agent. If these facts, excluding the object of the conveyance, had been found in the plaintiff's favor, then the question would have arisen whether the testator had not incurred this

liability so far in the nature of a surety for the defendant as to obligate it to protect his estate by satisfying this deficiency, for it is the duty of the principal for whom a legal liability may be incurred to save, not only the surety, but also persons substantially in the attitude of a surety, from losses, or the liability for losses, arising out of that relation. It therefore becomes necessary to examine the evidence to discover whether this was in fact the position of the testator. So far as the evidence proceeded, there was no conflict presented, and the plaintiff was entitled to its reasonable effect in his favor, in the disposition of the action.

The title to the land incumbered by the mortgage was previously vested in Michael Gavin. He had given a mortgage upon it to secure the payment of $16,000 to the Emigrant Industrial Savings Bank. This mortgage was in process of foreclosure, and Gavin was at the same time indebted to the defendant, but not to the testator. And on the day of the sale he applied to the latter for assistance, stating to him "that, if there was any benefit to be derived from that property, I wanted them [that is, the bank] to get the benefit;" and after that interview his testimony is that Mr. Brown went with him, and attended the sale and bought the property. But the deed was not taken to himself, as it is to be presumed it would have been if he had made the purchase for himself, but it was taken to Fernando Baltes. who was then discount clerk, and at the time of the trial was cashier of the bank; and this grantee, on the same day, by another deed, conveyed the land to the testator. Each of these deeds expressed the consideration of $22,500, but Baltes neither paid nor received any part of such consideration. It, on the contrary, was paid to the extent of $20,000 by the check of the testator, payable to the order of, and indorsed by, the referee who made that sale. This check was paid by the defendant, and charged to the cashier's account, which was the account of the bank itself. This took place in October, 1874; and on the 9th of December, in the same year, the testator executed the bond and mortgage, now more especially involved in this action, to James B. Warden. also since deceased, to secure the payment of the sum of $16,500, receiving from him, on the 30th of the month, his check for $16,000. This check was drawn upon the defendant, to the order of, and indorsed by, the testator, and the amount was credited to the same account as the check to the referee had been charged to. In that manner the defendant had the full benefit of this loan, and there was certainly no violation of its corporate powers involved in receiving these proceeds. And after that, and in June, 1875, an account was opened in the books of the defendant with the Thirty-Eighth street real estate, which was the land conveyed and mortgaged in the manner already mentioned. Mr. Gavin testified that he remained in possession of the property after its sale and conveyance, and paid part of the rent to the bank, and asked the privilege of using some of the money; and the plaintiff, who seems to be uninterested in the action, testified that he insured the property from 1874 to February, 1879, in the name of Gavin, and sent the bills to the bank, where they were paid. The mortgage to Warden was payable with 7 per cent. interest, and it appeared from the books of the bank that the sum of $560, which was the amount of the interest accruing every six months on this sum of $16,000, had been paid by it from time to time from July 1, 1875, to the 22d of January, 1880. In two instances it is stated to have been for six months' interest to J. B. Warden, and it was also admitted that the mortgage the interest was paid upon was this mortgage. The land was conveyed by the testator and his wife to the bank, on the 1st day of January, 1878, for the nominal consideration of $1, subject to this mortgage and the interest, which completely vested the bank with the full benefit and advantage of the property. While the testator held the title, it is clear that he did so for the bank, and the bank received its profits and bore its burdens. So far as the evidence has disclosed the facts, the testator derived no benefit whatever from the property. He

obtained it at the suggestion of the debtor of the bank, taking the title to Baltes and then to himself, for the avowed reason that the bank could not hold it; and all that he afterwards did with the land was not for himself, but for and on account of the bank; and the same management preceded, as well as followed, the formal conveyance of the title to the bank. There was no formal proof that this business was brought to the notice of the directors, but from the fact of its appearance in its different features upon the books of the bank, extending over a period of about five years, it may well be presumed to have been understood and approved by them; but, if it were not, it was one of the fiscal affairs necessarily within the authority of the president, as the testator was. A debt of considerable magnitude was owing to the bank, and no other mode of avoiding its jeopardy or its loss then appeared, and to promote the interests of the bank by guarding against this danger its money was advanced, and this property obtained, and it was nursed along with the expectation that profit would be derived from it; and that management of it continued after the testator left his office, and very nearly to the event of his own decease, when further payments were discontinued, and the mortgage to which the land was subject was foreclosed. There was no misconduct or want of authority in these acts, neither has any been alleged by way of defense; but they appertain so directly to the business of the bank as to be within the province and power of this officer. As the sequel has proved, it would have been more fortunate to have abandoned the debt, instead of trying, as the president did, to save it; but for this error of judgment his estate cannot consistently or equitably be declared to be liable for this deficiency.

The proof was abundant that the testator, in all that he did with this property, acted not for himself, but as the president of the defendant, and without any dissent on the part of either of its other officers; and the referee erred in not finding the main facts to have been proved which are included in these requests; and so he did in his conclusion that the bank never authorized, and did not ratify or adopt, any of these transactions. Whether the action can surely be maintained with these facts found in behalf of the plaintiff it is not proper now to consider, for on that subject the referee has not acted. They are indispensable for the presentation of that point, and it is by no means so clear that the action cannot be sustained if these facts are found so as to justify a decision against the plaintiff. The facts that the judgment has not been entered declaring the amount of the deficiency, and. that the plaintiff has paid no part of it, subject his action at least to doubt; but the right of the estate to indemnity under the broad principles of equity maintaining the protection of sureties, and others standing in like relations, may prove sufficient to remove this doubt. At the present time that is not a practical question, and when it shall become such will be the time for its more careful examination.

Important errors have intervened against the plaintiff, and it is because of them, and not for want of present favorable equities, that the referee concluded the action could not be maintained, and that can be corrected only by another trial. The testator was held liable also upon a note indorsed by him which the bank had discounted. This note was payable to the order of George W. Youle, cashier, and from the facts proved may be presumed to have been received from and discounted for the maker. The testator's indorsement may have been placed upon the paper to give the maker credit with the bank, but it can hardly be said to have been proved, even by a very liberal construction of the proof. This part of the case, therefore, is not free from grave doubt, and justice seems to require that the judgment should be reversed, and a new trial ordered, with costs to the plaintiff to abide the result.

All concur.