TIMOTHY Y. BROWN, as Executor, etc., of EPHRAIM D. BROWN, Deceased, Respondent, *v.* MECHANICS AND TRADERS' BANK, Appellant.

*Principal and agent — implied contract of indemnity — the principal only bound to pay after the agent has sustained an actual loss — notes indorsed by the president of a bank, and not protested — the liability created by part payments thereon.*

Where the president of a bank gives a bond and mortgage, upon a foreclosure of which a judgment for deficiency is entered against him in his individual capacity, and it is shown that in the transaction the relation of principal and agent existed between the bank and him, the implied contract of indemnity arising therefrom does not require the bank to pay him the amount of such judgment until it appears that he has actually paid the judgment.

Where the president of a bank, by indorsing notes made payable to its cashier or to himself, thus procures their discount by the bank, and, after the notes have become due, consents that moneys belonging to him, in the possession of the bank, shall be applied as part payment upon the notes, a presumption arises that the president indorsed the notes with intent to become surety to the bank, and he is liable thereon as a first indorser.

He will not be relieved from liability as an indorser because of a failure to present the notes for payment and to protest them, where it appears that, after the notes had become due, he allowed the bank to apportion among the notes the proceeds of a bond and mortgage belonging to him and collected by it; such a part payment constitutes in legal effect an acknowledgment of a liability to the bank by reason of the indorsements.

APPEAL by the defendant, the Mechanics and Traders' Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 17th day of January, 1896, upon the report of a referee.

*W. M. Rosebault,* for the appellant.

*George W. Stephens,* for the respondent.

RUMSEY, J. :

For many years before the 1st day of January, 1878, Ephraim D. Brown was the president of the defendant, and as such he had general charge of its affairs. In September, 1874, and while Brown was acting as president, one Michael Gavin, who was largely indebted to the bank, was the owner of the equity of redemption in certain premises subject to mortgages which were about to be foreclosed. Gavin called upon Brown in his capacity as president of the bank and besought him to bid in the property in the interest of the bank and of Gavin himself, so that Gavin might have an opportunity subsequently to make some arrangement by which the debt of the bank could be paid and Gavin himself might save something out of the property. In pursuance of this request, Brown attended the sale and bid off the property for a considerable sum, and it was conveyed to one of the clerks of the bank. Subsequently, upon the direction of Brown, the property was conveyed by the grantee, upon the foreclosure, to Brown himself, and he thereupon negotiated a loan for $16,000 upon his individual bond secured by a mortgage upon the premises. This sum was turned over by Brown to the bank. An account was opened upon the books of the bank with this property, and it was charged with all expenses and with the payment of interest upon the bond and mortgage given by Brown, which was paid by the bank. All rents of the property were received by the bank and were credited to the property. Brown died in November, 1880, and subsequently an action was commenced to foreclose the $16,000 mortgage which he had given. Judgment was entered in that action and the property was sold, and, after the application of the proceeds, there remained a deficiency of something over $4,400, upon which judgment was entered against the plaintiff as executor of the estate of Ephraim D. Brown. That judgment has not been paid, but the plaintiff has brought this action to recover the amount of the judgment from the defendant, upon the theory that, out of the relation of principal and agent, which existed between his testator and the bank with regard to this property, there arose an implied agreement on the part of the bank to indemnify the testator against liabilities incurred by him in the management of the property, and because of that indemnity the plaintiff insists that he is entitled to recover the amount of the deficiency.

It has already been adjudicated in this case upon a former trial that the relation of principal and agent existed between Ephraim D. Brown and the defendant concerning this property. (*Brown* v. *Mechanics & Traders' Bank*, 12 N. Y. Supp. 861.) The evidence on this trial upon this point is substantially the same as that given on the former trial, and the law as laid down by the General Term upon the former appeal must be followed as conclusive here upon the same state of facts. Starting from that proposition, the plaintiff claims that there is to be implied in behalf of Brown, the agent, against the bank, the principal, a contract on the part of the principal to indemnify and protect the agent from all loss or liability to loss which he might incur by reason of his assumption of the relation of agent for the bank, and his performance of the duties arising from that relation. This claim of the plaintiff was adopted by the learned referee, who held that the implied contract of the principal to his agent arising out of the relationship was to indemnify the agent, not only against actual loss, but against liability for loss, and that as soon as the liability was fixed, the agent was entitled to recover against his principal the amount of that liability as established, although he had not yet suffered any actual loss by reason of its existence. The correctness of this proposition is the first question to be examined upon this appeal.

There was no express contract of indemnity between the bank and Brown as its agent, but whatever duty arose towards him was one which was implied from the existence of the relation of principal and agent. This fact takes the case at once out of the principle established by those cases which are based upon an express contract between the parties. There is no doubt that it is competent for two persons to contract so that one of them shall be required to indemnify the other against the existence of a liability, and so to frame that contract that from the mere fact of the liability the obligor shall be compelled to pay to the obligee the amount of the liability, although no actual loss has resulted to the obligee by reason of it. There are many such cases in the books, but all of them arise out of an express contract, and no one is based upon a contract which is implied from the existence of any relation between the parties.

The necessity for the implication of a contract of indemnity on

the part of a principal towards his agent arises from the fact that the agent in the performance of his duty is often compelled to assume for the benefit of his principal, liabilities which may become onerous, and which, if there were no contract of indemnity, might often be ruinous to the agent. But the implied contract goes no further than justice and equity requires it should go to protect the agent. So long as he suffers no loss because of his liability, there is no reason why the agent should call upon his principal for any reimbursement. Justice requires that the principal should step in to protect him, only when it appears that because of the duty which he assumed towards his principal he has suffered some loss which ought to be made good to him. If that is done, then the principal has done everything which equity calls for, and the agent is none the worse for having stood in that relation. The performance of this duty by the principal fully protects the agent against any damage which he can suffer because of the relationship which he has assumed, and to require the principal to do more than this would be to impose upon him a duty to protect the agent against some damage which he may never suffer. To limit this implied contract of indemnity to indemnity against loss merely, would seem to be the more reasonable rule, and one which is best calculated to subserve the interest of both parties, and it seems to be the rule which is laid down in the books. In Story on Agency it is said that the agent is entitled to indemnity against all loss which he has sustained by reason of the relation of principal and agent. (Story on Agency, §§ 339, 340.) The same rule is laid down in Addison on Contracts (2 Add. on Cont. § 936), and in numerous cases which are cited by those writers. The rule is well illustrated, although not precisely decided, by the case of *Howe* v. *B., N. Y. & E. R. R. Co.* (37 N. Y. 297). Howe was a conductor for the defendant, and in obedience to orders which he had received from his employer he had ejected a passenger from his train. The passenger brought an action against him for this act and recovered a judgment. Howe gave his note to the passenger for the amount of the judgment, which was satisfied, and thereupon he brought his action against the company to recover the amount of his loss which he had suffered by reason of the judgment against him. His action was based upon the implied contract of indemnity of the principal

with the agent, and the defense was that the giving of a note was not a payment of the judgment, and that until the note was actually paid Howe had suffered no loss against which he was entitled to be indemnified. The only question litigated in any of the courts was, whether the giving of the note was a sufficient payment of the judgment so that it could be said that Howe had lost anything by reason of his acts as agent. It can readily be seen that if the contract was to indemnify against liability this question could not have arisen, for the liability of Howe was fixed by the judgment. But the question was seriously considered in all the courts, and it was held that the satisfaction of the judgment by the giving of the note was a sufficient payment so that Howe was entitled to indemnity. The theory upon which the case was decided was that the implied contract of indemnity on the part of the principal was to indemnify him against actual loss and not merely against liability. That being the contract between the parties which the law will imply, it necessarily follows that the mere recovery of a judgment against the agent is not a sufficient loss or damage to entitle him to recover more than nominal damages at least, but he is not entitled to substantial damages unless it appears that he has actually paid the judgment against him so that he will have incurred an actual loss if he is not repaid the amount which he has been required to pay out. (*Gilbert* v. *Wiman*, 1 N. Y. 550; *Maloney* v. *Nelson*, 144 id. 182.) The referee, therefore, erred in holding that the plaintiff was entitled to recover anything more than nominal damages on the facts as they were made to appear.

The defendant set out in its answer as a counterclaim certain notes which were indorsed by the plaintiff's testator, and which were discounted and held by the defendant, and upon which it sought to recover. These notes were four in number. Three of them were made payable to the cashier of the defendant bank, and they were indorsed by the plaintiff's testator. The fourth one was made payable to the plaintiff's testator, and was indorsed by him and discounted by the bank. Upon one of the notes, which was made payable to the cashier of the bank, the testator had waived notice and protest, but with regard to the other notes there was no waiver, nor was there any proof that either of them had been presented for payment or protested, or that notice of it had been given to the plaintiff's tes-

tator. The referee held that the defendant was not entitled to recover on any of these notes. The reason for the ruling was, as it seems, that there was no proof that Ephraim D. Brown had indorsed these notes with the intention of becoming liable to the bank as a surety for the maker, and for that reason the counterclaim was dismissed. In this conclusion, we think, the referee erred.

It appeared from the testimony of the discount clerk of the bank that the three notes which were made payable to the cashier were indorsed by Mr. Brown before they were discounted; that they were discounted at the request of Mr. Brown, and that each one was discounted in reliance upon his indorsement. It appeared, also, that after the notes had become due, when it was claimed on the part of the bank that Brown was liable to it by reason of his indorsements, he, after some dispute, conceded his liability and consented that certain moneys belonging to him, in possession of the bank, should be applied upon these several notes, and that such moneys were applied as part payments on the notes. These facts were entirely undisputed, and from them, we think, there arose a presumption that he indorsed the notes with intent to become surety to the bank and that he was liable thereon as a first indorser. Nor do we think that Brown was relieved from the liability upon his indorsement by a failure to present the notes for payment and protest them and give him notice of the protest. It appeared that, after these notes had become due, there was put into the hands of the bank by Mr. Brown a certain mortgage known as the Hollahan bond and mortgage. This mortgage was collected by the bank, who held the proceeds and gave notice to Mr. Brown that it proposed to apportion the proceeds of this bond and mortgage among these notes. To this Brown at first objected, but, finally, as appears from the testimony of the plaintiff, who conducted the negotiation for Ephraim Brown, it was agreed that the proceeds of the bond and mortgage in the hands of the bank should be indorsed upon these notes as part payment. The plaintiff says that Ephraim D. Brown consented to this and authorized him to advise the then president of the bank of that consent, which he did, and that the proceeds of the mortgage were then indorsed upon the notes. This having been done with the consent of Brown, operated as a part payment upon the notes, and the legal effect of that part payment was an acknowledgment of his liability to the bank by

reason of his indorsements.   (2 Daniel on Neg. Inst. § 1165 *et seq.;* Tebbetts v. *Dowd,* 23 Wend. 379.)   The referee erred, therefore, in his disposition of these counterclaims, because he should have allowed the amount due upon the notes to the defendant.

For these errors the judgment entered upon the report of the referee must be reversed and a new trial ordered before another referee to be appointed on the entry of the order hereon, with costs to the appellant to abide the event.

VAN BRUNT, P. J., WILLIAMS, PATTERSON and PARKER, JJ., concurred.

Judgment reversed, new trial ordered before another referee to be appointed on the entry of the order hereon, costs to appellant to abide event.