## GIOVAGNIOLI v. FT. ORANGE CONST. CO.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

1. MASTER AND SERVANT (§ 107*)—INJURY TO SERVANT—"NEGLIGENCE"—EMPLOYER'S LIABILITY ACT.

Where it was practicable to use mechanical means to keep a machine on rails provided for it so as not to rely on two workmen whose combined efforts might become of no avail in specified cases, the failure of the master to provide such mechanical means was negligence within the employer's liability act, and an employé injured in consequence thereof could recover for the damages sustained.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202, 212, 254, 255; Dec. Dig. § 107.*

For other definitions, see Words and Phrases, vol. 5, pp. 4743–4763; vol. 8, pp. 7729–7731.]

2. DAMAGES (§ 46*)—PERSONAL INJURIES—MEDICAL EXPENSES—RECOVERY.

Where the superintendent of a construction company retained a physician to attend an injured employé, but it did not appear that the superintendent had any power to incur any extended liability against the company, the employé suing for the injury could recover the medical expenses incurred.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 99, 251; Dec. Dig. § 46.*]

3. PARENT AND CHILD (§ 16*)—INFANTS (§ 9*)—EMANCIPATION—PERSONAL INJURIES—MEDICAL EXPENSES.

An infant employé, who receives his own wages, and who pays his own way, is emancipated, and where he sustains a personal injury he is liable for medical attendance, and he may recover from the master, liable for such injuries, such expenses.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 165–175; Dec. Dig. § 16;* Infants, Cent. Dig. § 10; Dec. Dig. § 9.*]

Houghton, J., dissenting in part.

Appeal from Trial Term, Albany County.

Action by Nazzarino Giovagnioli, an infant, by Frank Fiore, guardian ad litem, against the Ft. Orange Construction Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

Countryman, Nellis & Du Bois (Andrew J. Nellis, of counsel), for appellant.

Walter H. Wertime (Peter A. Delaney, of counsel), for respondent.

SMITH, P. J. This is an action brought under the employer's liability act to recover damages for personal injuries sustained by respondent while employed by appellant in the construction of a certain lock upon the State barge canal at Waterford, N. Y., at about 11 o'clock p. m. on the night of November 23, 1909. The walls of the lock in question were to be of concrete about 30 feet high, and for purposes of construction were partitioned off into sections about 50 feet in length, and these sections were filled alternately to the depth of about 4½ feet. The concrete was mixed some distance away and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was then placed on a belt conveyor 20 inches wide and about 1,200 feet long which passed along the lock upon a trestle. Upon this belt conveyor was an apparatus known as a tripper, consisting of a small car upon trucks and having two rollers over which the belt passed. The upper roller reversed the direction of the belt, and the material on the belt then dropped off into a chute and from there passed into the lock sections mentioned. As the work progressed, the tripper was moved backward and forward along the belt by two men, one on each side of the tripper, who turned cranks connected by cogwheels to the truck of the tripper car. The position of the tripper was thus frequently changed in order that the concrete might be properly distributed in the forms, but just how frequently was a matter of dispute. Respondent claimed that the tripper at times was not moved for periods of from seven minutes to half an hour, while appellant sought to show that the tripper was continuously being shifted when the conveyor was in full operation. It is undisputed that the tripper as constructed had a tendency to tip forward, owing to the pull of the belt upon the upper roller, especially when the belt was carrying a heavy load, and on several occasions prior to the accident this had happened, and the car had left the track, and more or less damage had resulted. No mechanical provision seems to have been made to prevent such an occurrence, and appellant claims that it was the duty of the two men operating the cranks to hold the tripper car to the rails. The capacity of the conveyor was over 20 tons of material distributed along its entire length. Respondent was a minor about 18 years of age, not speaking English, and was employed as a common laborer. His duties were to stand upon the tripper car, on an unguarded step about 30 inches long and 18 inches wide, and to loosen with a stream of water from a hose any concrete that might adhere to the belt. He also had two lighted lanterns to be used for signaling to the motorman in charge of the electric power operating the belt, thus ordinarily holding the hose in one hand and a lantern in the other. He had been working on the tripper only three days when the car tipped up and left the track and he was thrown off and into the partially filled lock section below and sustained serious and permanent injuries for which he was awarded a verdict of $5,000 in the court below.

[1] Respondent's claim was that the tripper was an unsafe place in which to work on account of its tendency to tip up and leave the track, which must have been known to appellant, and the evidence seems sufficient to justify such a finding, in effect, by the jury. Appellant claims that by reason of the frequent, if not continuous, shifting of the tripper by the two workmen operating the cranks, it was impracticable to have the tripper furnished with clamps for the purpose of fastening it to the rails and so preventing its evident tendency to tip up. But even if the tripper was constantly in motion when the conveyor was in operation, about which there is considerable doubt, it was surely practicable to use some mechanical means or different construction of the car to keep the machine on the rails so as not to rely for this important matter on the two workmen mentioned, whose

combined efforts might easily become of no avail in case of an extra heavy load or sudden strain of any kind on the belt.

[2] A more serious question arises from the refusal of the learned trial court to charge, as requested, that if the surgeon attended respondent at the request of the superintendent of the appellant, intending to render his services upon the credit and at the charge of the appellant, the respondent was not liable, and the services rendered could not be recovered for in this action. The only evidence in the case upon which this request to charge could be based is the testimony of the surgeon that appellant's superintendent called upon him to attend respondent, "retained him." The party named testified that he was "superintendent of excavation" for the appellant. The services of the surgeon extended over a period of five months while respondent was in the hospital, and also for some months after that. The evidence seems insufficient to support the charge requested, inasmuch as the very natural act of the superintendent in calling a doctor to attend a severely injured workman as an emergency matter would not be sufficient of itself to show that the superintendent ever intended to bind his employer for the full amount of that doctor's bill extending over a period of months and amounting to $600, the sum claimed here as the reasonable value of such services. Nor is the use of the word "retained," without more, sufficient to change the situation. If this superintendent or any other officer of appellant had had any agreement or understanding with the surgeon whereby appellant was to become liable for his bill, such fact should have been brought out definitely upon the trial. See Van Gaasbeek v. United States Lace Curtain Mills, 132 App. Div 595, 116 N. Y. Supp. 776. Moreover, it does not appear that the superintendent of construction actually had any power, either express or implied, to incur any such extended liability on the part of his employer, and for all that appears in the case as to his duties any such agreement, if made by him with this doctor, would have been outside of his duties, and therefore not binding upon this appellant. The request to charge was therefore properly refused.

[3] It appeared upon the trial that respondent was receiving his own wages and paying his own way, and the trial court, accordingly, held that, if he could recover at all, the expenses for doctors' and hospital bills could be included in the recovery on the ground that these were his liabilities even although an infant. As the evidence mentioned was undisputed, the trial court properly held that it amounted to an emancipation of this infant, and in such a case the obligation ordinarily resting upon a parent to provide necessaries for the child is removed, and the liability for necessaries furnished becomes that of the infant himself, and in an action thereon his infancy is no defense. 29 Cyc. p. 1610; Johnson v. Gibson, 4 E. D. Smith, 231, 234.

The judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur; except HOUGHTON, J., who votes for reversal unless the plaintiff stipulates to reduce the verdict by the sum of $942, the amount of the physicians' bills erroneously embraced therein, and, if such stipulation be filed, then he votes for affirmance of the judgment as modified.