Melville HARRIS, as Trustee in Bankruptcy of Leonard Massello and William Massello, Plaintiff-Appellee,

v.

STANDARD ACCIDENT AND INSURANCE COMPANY, Defendant-Appellant.

No. 38, Docket 26892.

United States Court of Appeals Second Circuit.

Argued Sept. 28, 1961.

Decided Dec. 6, 1961.

628

Maurice Rosenberg, New York City (Reid A. Curtis, James B. Donovan, Patrick J. Hughes, and Watters & Donovan, New York City, on the brief), for defendant-appellant.

William A. Hyman, New York City (Harold W. Hayman, New York City, on the brief), for plaintiff-appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

Plaintiff, the trustee in bankruptcy of Leonard and William Massello, brought this action to recover damages for defendant's refusal, allegedly in bad faith, to settle a personal injury action brought against the Massellos, within the limit of a $10,000 automobile liability insurance policy issued by the defendant, Standard Accident and Insurance Company. The district court awarded $89,-000 damages, and Standard appeals. Since there was no showing that the insured suffered any loss, we reverse the judgment of the district court. In view of this, it is unnecessary for us to determine whether New York law recognizes a cause of action for refusal to settle under the circumstances of this case.

Standard issued an automobile liability insurance policy to Leonard Massello with a limit of liability of $10,000 for any one person for any one accident.[1] On January 5, 1952 William Massello, while driving a panel truck owned by his broth-

1. The plaintiff introduced in evidence a sample policy which was in identical form to that issued to Leonard Massello. Under this policy, the " 'insured' includes the named insured and also includes any person while using the automobile * * * with his permission." Standard agrees to "defend any suit against the insured." Furthermore, Standard "may make such * * * settlement of any claim or suit as it deems expedient" and "the insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense * * *"

er Leonard, collided with a taxicab in Yonkers, New York. As a result of this collision, the taxicab ricocheted onto the sidewalk where it struck a pedestrian, Mrs. Elizabeth Pease Van Suetendael, inflicting serious injuries. Mrs. Van Suetendael sued the owners and drivers of both vehicles in the New York Supreme Court. Pursuant to the policy, Standard assumed the defense of the action on behalf of the Massellos. Although numerous settlement discussions were had both before and during the trial, at which Mrs. Van Suetendael was willing to settle for the policy limits or a little less, no settlement was reached and, after a trial in March 1957, the jury brought in a $105,000 verdict for Mrs. Van Suetendael upon which Judge Fanelli entered judgment. Standard paid Mrs. Van Suetendael the sum of $10,-000, the limit of its policy; the Travelers Insurance Co. paid on behalf of the taxicab owner the sum of $5,000, the limit of its policy; and the taxicab owner personally paid an additional $1,-000, receiving a release of the lien of the judgment against him. The sum of $89,-000 remained uncollected upon the judgment,[1a] and for this amount the trustee brought suit against Standard.

Even before entry of the Van Suetendael judgment, the Massellos were insolvent. In August 1956 they had lost their business to creditors. Subsequent to the entry of judgment, the Massellos filed petitions in bankruptcy in the United States District Court for the Southern District of New York and were adjudicated bankrupts. Although the Massellos were discharged in bankruptcy on November 17, 1958, the bankruptcy proceedings have remained open pending the outcome of this damage action against Standard.

The district judge tried the case without a jury. Judge Fanelli of the New York Supreme Court, who had presided at the personal injury trial, testified that when he told Standard's counsel, Reid Curtis, that he thought all the defendants would be held liable and that Standard could not win, Mr. Curtis replied that he knew it. Mrs. Van Suetendael's attorney, William Hyman, testified that Mr. Curtis told him that since Standard had nothing to lose, he would finish the trial. Although Mr. Curtis denied these statements, the district judge credited Judge Fanelli and Mr. Hyman. William Massello, the driver of the truck, at all times contended that he was not responsible for the accident and both Massellos admitted that since they were already insolvent, they could not pay any excess judgment.

The district court held that since the insurer had exclusive control of settlement, it had an obligation to consider, in good faith, the insured's interests as well as its own when making decisions as to settlement. In light of the severity of Mrs. Van Suetendael's injuries and the probability of a verdict in her favor, coupled with the statements made by Standard's trial attorney during the personal injury action, the judge concluded that the trustee in bankruptcy had a cause of action for Standard's bad faith in its conduct of the defense. The district court held that payment by the insured should not be a prerequisite to recovery as the insurer could then "easily avoid the duty of good faith owed to the insured." 191 F.Supp. at 544. He pointed out that New York had not yet adopted any rule on damages in such a case and cited Iowa, California and Tennessee authority to support his view that entry of judgment was sufficient.

The district court had jurisdiction under § 23, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 46, sub. b, which gives federal courts jurisdiction of suits brought by the trustee provided the defendant consents.[2]

---

1a. Hereinafter this amount in excess of the policy coverage will be referred to as the excess judgment.

2. The record does not disclose facts upon which diversity jurisdiction could rest.

The complaint alleges only that the plaintiff-trustee in bankruptcy is a citizen of New York, that the defendant Standard is incorporated in Michigan, and that more than $10,000 is in controversy.

The courts have increasingly recognized a duty on the insurer to exercise some degree of care or good faith toward the insured in deciding whether to settle, although most contracts of insurance merely give the insurer the sole right to settle actions arising within the coverage of the policy but do not require it to do so. The interests of the insured and insurer often conflict. A settlement within the limits of the policy coverage is usually advantageous for the insured, for then he avoids all risk of personal liability for a judgment in excess of the policy limits. On the other hand, rather than consent to a settlement which would require the payment of substantially the entire amount of its coverage, the insurance company would generally prefer to proceed to trial and seek to avoid liability; should it lose, it may not be liable for much more than it would have had to pay in settlement. Consequently, the majority of jurisdictions which have ruled on the point do impose a duty upon the insurer in some situations where it has failed to give appropriate weight to the insured's interests.[3]

Standard's duties and liabilities in this case are governed by the law of New York,[4] and this the parties do not dispute. But we do not pause to discuss whether the New York courts would hold Standard liable in this situation.[5] The plaintiff has failed to prove any damage whatever under New York law. Therefore, we reverse the judgment of the district court and direct that the complaint be dismissed. In the discussion of damages to which we now turn, we assume *arguendo* that the plaintiff has otherwise made out a sufficient case for recovery.

■■■ New York's insurance statutes, relied upon by Judge SMITH in his dissenting opinion, have no persuasive effect as to what constitutes such damage to an insured as to render the insurer liable on an excess judgment. There are two types of insurance policies, those indem-

The district court did not discuss jurisdiction nor did the parties' briefs on this appeal. According to the Bankruptcy Act, § 23, 11 U.S.C.A. § 46, the citizenship of the bankrupt and not that of the trustee is relevant in determining diversity. Moreover, under 28 U.S.C. § 1332(c) which applies to suits commenced after July 25, 1958, a corporation is deemed a citizen of the state wherein is located its principal place of business. Although this action was filed on October 15, 1958, there is no allegation as to Standard's principal place of business. Therefore, the facts necessary to diversity jurisdiction both as to the bankrupts and Standard are lacking. Nevertheless, the district court had jurisdiction on another basis. The Bankruptcy Act, § 23; sub. b, 11 U.S.C.A. § 46, sub. b, gives federal courts jurisdiction over all suits brought by a trustee in bankruptcy if the defendant consents. See Schumacker v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433 (1934). The courts have held that a defendant consents if he argues the merits without objection to jurisdiction. See, e. g., Cline v. Kaplan, 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944); Toledo Fence & Post Co. v. Lyons, 290 F. 637, 640 (6 Cir. 1923); Seegmiller v. Day, 249 F. 177, 178–179 (7 Cir. 1918); In re Read York,

Inc., 152 F.2d 313 (7 Cir. 1945); In re Berry, 247 F. 700, 704–705 (E.D. Mich.1917).

3. See, e. g., Keeton, Liability Insurance and the Responsibility for Settlement, 67 Harv.L.Rev. 1136, 1138 (1954); Wymore, Safeguarding Against Claims in Excess of Policy Limits, 28 Ins.Counsel J. 44, 48–57 (1961) (catalog of cases).

4. See, e. g., Harrigan v. Bergdoll, 270 U.S. 560, 46 S.Ct. 413, 70 L.Ed. 733 (1926); Austrian v. Williams, 198 F.2d 697 (2 Cir.), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952); Hill, The Erie Doctrine in Bankruptcy, 66 Harv.L.Rev. 1013, 1046–48 (1955).

5. It is not clear whether New York would hold that Standard had violated its duty to its insured under the facts of this case. See Auerbach v. Maryland Cas. Co., 236 N.Y. 247, 140 N.E. 577, 28 A.L.R. 1294 (1923); Best Building Co. v. Employers' Liab. Assur. Corp., 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464 (1928); Streat Coal Co. v. Frankfort Gen. Ins. Co., 237 N.Y. 60, 142 N.E. 352 (1923); Brunswick Realty Co. v. Frankfort Ins. Co., 99 Misc. 639, 166 N.Y.S. 36 (Sup.Ct.1917). No case bearing upon this question has been decided by the New York Court of Appeals since the Best case in 1928.

nifying the insured against liability and those indemnifying against loss.[6] In order for the insured to recover against the insurer under the first type, the insured need prove only that a judgment has been entered against him. On the other hand, policies of the second type require proof that a loss has actually been suffered. To emphasize the nature of this type of policy, insurance companies often insert provisions that the insured shall not recover from them until he has actually paid a judgment against him. Because of an increasing feeling that automobile liability insurance should protect the injured person as well as the negligent driver,[7] coupled with the idea that having received the premiums the insurance company should not avoid liability to a person injured within the scope of the policy merely because the insured was unable to pay, the legislatures of New York and many other states have prohibited this type of policy in certain situations.[8] The New York statute, first enacted in 1917,[9] prohibits the use of the insured's insolvency or bankruptcy as a defense to the insurance company and creates a cause of action by the injured person directly against the insurer if the former's judgment against the insured remains unsatisfied for 30 days. Standard's policy issued to Leonard Massello incorporates these provisions. Pursuant thereto, Standard paid Mrs. Van Suetendael's judgment against the Massellos to the extent of the limit of coverage of the policy, $10,000. It is to be noted, however, that this New York statute explicitly prohibits use of the insured's insolvency or bankruptcy as a defense only to the face amount of the policy; it does not forbid such defense as to the excess judgment.

The reasons for the enactment of the statute warrant its application to the coverage of the policy only and not to the excess liability. The argument that insurance should protect the injured person as well as the insured applies only to the extent that the insured has taken out insurance. The argument that having received premiums the insurance company should not be relieved of liability because of the insured's bankruptcy does not apply to the excess judgment since the insurer has received premiums only for the face amount of the policy, here $10,000. If, as our dissenting colleague suggests, we are to decide this case on "the spirit of New York's concern for the injured victim" we would be usurping the function of New York's legislature. Perhaps New York should require those in the trucking business to carry more adequate liability insurance. But so long as the state leaves in the hands of the potential wrongdoer the amount of insurance he shall carry, courts should not depart from well-settled principles of tort law and damages in order to impose a liability for which the parties did not contract. Therefore, the New York insurance law does not require Standard to pay the excess judgment against the Massellos; proof of tort damages is necessary.

 The law of New York requires proof of actual loss to support recovery for a tort of this type. The purpose of tort damages is to compensate an injured person for a loss suffered and only for that.[10] The law attempts to put the

6. See Saratoga Trap Rock Co. v. Standard Acc. Ins. Co., 143 App.Div. 852, 855–856, 128 N.Y.S. 822 (1911); 37 A.L.R. 644 (1925).

7. See, e. g., Lauritano v. American Fidelity Fire Ins. Co., 3 A.D.2d 564, 567–568, 162 N.Y.S.2d 553, 556–557 (1957), aff'd without opinion, 4 N.Y.2d 1028, 177 N.Y.S.2d 520 (1958).

8. See, e. g., Guerin v. Indemnity Ins. Co. of North America, 107 Conn. 649, 142 A. 268 (1928).

9. Laws of 1917, Ch. 524, New York Insurance Law, § 109; now New York Insurance Law, McKinney's Consol.Laws, c. 28, § 167(1) (a, b); see Coleman v. New Amsterdam Cas. Co., 247 N.Y. 271, 160 N.E. 367, 72 A.L.R. 1443 (1928).

10. Reno v. Bull, 226 N.Y. 546, 553, 124 N.E. 144, 146 (1919); Rusciano & Son Corp. v. Milhalyfi, 165 Misc. 932, 942–943, 1 N.Y.S.2d 787, 797 (Sup.Ct.1938); Abell v. Cornwall Ind. Corp., 241 N.Y. 327, 335, 150 N.E. 132, 135, 43 A.L.R.

plaintiff in a position as nearly as possible equivalent to his position before the tort.[11] Recovery is permitted not in order to penalize the tortfeasor,[12] but only to give damages "precisely commensurate with the injury." [13]

The trustee argues that although the Massellos were insolvent before the rendition of the excess judgment, have never paid any part of it, and have been discharged from liability for it by bankruptcy, they have nevertheless been injured by it to the extent of $89,000, the face amount of the excess judgment. The New York courts have not passed on this question. The courts of other states have split on whether the insured is damaged by an uncollectible excess judgment against him.[14] In the leading case of Dumas v. Hartford Acc. & Indem. Co., 92 N.H. 140, 26 A.2d 361 (1942), the New Hampshire court held that since an actual injury rather than the mere possibility of an injury is a prerequisite to a tort recovery, either the insured must pay the excess judgment or his financial status must be such that it is sure to be collected. See also Universal Auto. Ins. Co. v. Culberson, 126 Tex. 282, 86 S.W.2d 727, 87 S.W.2d 475 (1935); State Auto. Mut. Ins. Co. of Columbus, Ohio v. York, 104 F.2d 730, 734 (4 Cir.) (alt. holding), cert. denied, 308 U.S. 591, 60 S.Ct. 120, 84 L.Ed. 495 (1939); Norwood v. Travelers Ins. Co., 204 Minn. 595, 284 N.W. 785, 131 A.L.R. 1496 (1939); Restatement, Torts, § 871, comment (j); cf. American Mutual Liability Ins. Co. of Boston, Mass. v. Cooper, 61 F.2d 446 (5 Cir. 1932), cert. denied,

289 U.S. 736, 53 S.Ct. 595, 77 L.Ed. 1483 (1933); Boling v. New Amsterdam Casualty Co., 173 Okl. 160, 46 P.2d 916 (1935). But see 8 R.C.L. p. 500. Those cases which apparently hold that the rendition of an excess judgment is sufficient damage to permit a recovery for the amount of the unpaid judgment are all distinguishable. The only case in which the insured went through bankruptcy and thus was discharged from the necessity of future payments, as were the Massellos in this case, was Brown v. Guaranty Ins. Co., 155 Cal.App.2d 679, 319 P.2d 69, 66 A.L.R.2d 1202 (Dist.Ct.App.1958). However, in that case there was no evidence that the insured was insolvent *before* the excess judgment was imposed upon him, as were the Massellos. For if the insured's assets exceeded his liabilities exclusive of the excess judgment, then the insured, although discharged in bankruptcy, would actually be damaged by the value of his net estate before rendition of the excess judgment. However, the recovery of that amount by his trustee in bankrutcy would be applied to the payment of his debts. The only way to make the insured whole, i. e., to place him in a position where his net assets are as great after as before payment of the excess judgment, would be to allow him to recover the entire amount of that judgment. In several other cases heavily relied upon by the trustee, the courts were dealing with estates which were solvent before the excess judgments were rendered.[15] In none of the other cases permitting recovery of the amount of the excess judgment without payment was there any evidence that the insured had

---

880 (1925); Halpern v. Budner, 149 N.Y.S.2d 716 (Sup.Ct.1956), modified, 5 A.D.2d 1011, 174 N.Y.S.2d 254 (1958).

11. Restatement, Torts § 901 and comments.

12. Victor A. Harden Realty & Const. Co. v. City of New York, 64 N.Y.S.2d 310, 322 (Sup.Ct.1946).

13. Gressman v. Morning Journal Assoc., 197 N.Y. 474, 480, 90 N.E. 1131, 1133 (1910).

14. See Keeton, supra note 3, at 1173–74.

15. Henke v. Iowa Home Mutual Casualty Co., 250 Iowa 1123, 97 N.W.2d 168, 180–81 (1959); Lee v. Nationwide Mutual Ins. Co., 286 F.2d 295 (4 Cir. 1961). The heirs of a deceased insured's estate step into the shoes of the insured and are entitled to receive his net estate unreduced by the excess judgment.

The facts in Farmers Ins. Exchange v. Henderson, 82 Ariz. 335, 313 P.2d 404 (1957), make it appear that the insured was solvent before the excess judgment.

been discharged from the liability,[16] and in only two cases was there even a hint that the insured was insolvent prior to the excess judgment.[17]

■ Although no case has found damage in the situation here presented, namely, an insured who was already insolvent before rendition of the excess judgment and has since been discharged in bankruptcy, it is desirable to examine the reasons urged to support liability where the excess judgment rendered the insured insolvent or even where he was already insolvent but did not obtain a bankruptcy discharge, in order to determine whether they are pertinent and therefore persuasive here. The basis most frequently urged for finding damage although there has been no payment is that the insurance company would receive an unjustified windfall if it is released from liability when its insured turns out to be insolvent.[18] We do not agree. The insurer has received premiums only upon the face amount of the policy, and this much it must pay regardless of the insured's financial condition. Although, *arguendo*, the insurance company has committed a tort by refusing to settle in good faith, the gist of tort liability is recompense for harm actually sustained. To argue that the insurer gets an unjustified windfall merely avoids the crucial question whether the insured has actually been harmed. Moreover, if discussion of windfalls were relevant, it should be pointed out that recovery by the trustee would result in a fortuitous recovery for Mrs.

Van Suetendael who, but for the insured's breach of duty to its policyholder, would not have recovered a figure in excess of the policy limit.

Another ground often advanced in support of recovery, that the insurer will be less responsive to its duty to settle if it can avoid liability when its insured is insolvent,[19] is of slender stature, at least as to the situation here. Presumably it is only in a very small percentage of the cases that the insured would be insolvent at the time of settlement negotiations and would later go into bankruptcy, an eventuality the insurer cannot predict. Moreover, this argument obscures the essential question—whether the insured has actually been harmed by the bad faith refusal to settle.

A third theory, advanced as additional support for the idea that damage arises on rendition of the excess judgment, is that the insured might otherwise be forced to pay the judgment at a juncture when his tort action has become barred by the statute of limitations.[20] The argument would hardly be persuasive even if our holding were that damage can never arise merely on rendition of the judgment but only upon its payment—which it is not. For a jurisdiction so holding would necessarily postpone the accrual of the tort claim until the event giving rise to it, i. e., payment.[21]

The final theory frequently relied upon by cases holding the insurer liable although the insured has not paid the excess judgment is that the liability

16. Schwartz v. Norwich Union Indemnity Co., 212 Wis. 593, 250 N.W. 446 (1933); Wessing v. American Indemnity Co., 127 F.Supp. 775 (W.D.Mo.1955); Southern Fire & Casualty Co. v. Norris, 35 Tenn. App. 657, 250 S.W.2d 785 (1952); Alabama Farm Bureau Mutual Casualty Ins. Co. v. Dalrymple, 270 Ala. 119, 116 So.2d 924 (1959).

17. Southern Fire & Casualty Co. v. Norris, supra, note 16; Alabama Farm Bureau Mutual Casualty Ins. Co. v. Dalrymple, supra, note 16.

18. Southern Fire & Casualty Co. v. Norris, supra, note 16, 250 S.W.2d at 791; Alabama Farm Bureau Mutual Casualty

Ins. Co. v. Dalrymple, supra, note 16, 116 So.2d at 926.

19. See cases cited in footnote 18.

20. Brown v. Guarantee Ins. Co., 155 Cal. App.2d 679, 319 P.2d 69, 76, 66 A.L.R. 2d 1202 (Dist.Ct.App.1958); Wessing v. American Indemnity Co., supra, note 16, 127 F.Supp. at 781.

21. See American Mutual Liability Ins. Co. v. Cooper, 61 F.2d 446 (5 Cir. 1932), cert. den., 289 U.S. 736, 53 S.Ct. 595, 77 L.Ed. 1483 (1933); Boling v. New Amsterdam Casualty Co., 173 Okl. 160, 46 P.2d 916 (1935); case Note, 72 H.L.R. 568, 569–70 (1959).

should be treated like medical expenses.[22] Most courts hold that an injured person can recover, as one element of damages in a personal injury action, the fair value of medical treatment required because of the tort although the injured party has not paid for the treatment.[23] In the great bulk of cases the injured party is liable for the bills at the time of trial and there is no evidence of his inability to pay.[24] In the present case the Massellos have not paid the judgment and will not be required to pay it. Those few cases where the injured party will never have to pay his medical bills because a friend or relative or an insurance company has paid them are not inconsistent with our holding. Although the injured person is not out of pocket the amount of the bills, if a friend or relative pays them, he and his family or friends are. Their generosity has not been directed to the tortfeasor but to their injured friend or relative.[25] Had they given him the money and let him use it to pay his own bills sufficient damage would have been shown. The formal difference that they paid the bills directed should not cause a difference in result. If the bills are paid by an insurance company under an accident or health insurance plan taken out by the injured person, the premiums which he has paid are the price of his protection;[26] thus he has indirectly paid his own medical expenses. In the present case the judgment was not paid by the Massellos' friends or relatives nor did the Massellos pay premiums on anything above the $10,000 face amount of the policy. We have found only four medical expense cases which reach a result which would support liability by Standard to the trustee in this case. In one case where the medical bills had been discharged in bankruptcy[27] and in three where they were barred by the statute of limitations,[28] courts outside New York permitted the injured party to recover the value of his medical treatment from the tortfeasor.

New York, however, in an early case held that the injured party cannot recover for medical expenses which have not been paid if there is a showing that the injured party is unable to pay them.[29] In none of the later New York cases allowing recovery of medical expenses which the injured party had not yet paid is there evidence that he could not pay them.[30] Therefore, it seems doubtful

22. Brown v. Guarantee Ins. Co., supra, note 20, 319 P.2d at 76; Wessing v. American Indemnity Co., supra, note 16, 127 F.Supp. at 781.

23. 25 C.J.S. Damages § 47(b).

24. See McNair v. Manhattan Ry. Co., 51 Hun 644, 22 N.Y.St.Rep. 840, 4 N.Y.S. 310 (N.Y.Sup.Ct.1889), aff'd without opinion, 123 N.Y. 664, 26 N.E. 750 (1890); Baumgart v. Finewood, 255 App. Div. 826, 7 N.Y.S.2d 74 (1938); Reynolds v. City of Niagara Falls, 81 Hun 353, 63 N.Y.St.Rep. 118, 30 N.Y.S. 954 (N.Y.Sup.Ct.1894); Heater v. Delaware, L. & W. R. R. Co., 90 App.Div. 495, 85 N.Y.S. 524 (1904); Giovagnioli v. Fort Orange Const. Co., 148 App.Div. 489, 133 N.Y.S. 92 (1911); Santasicro v. Briggs, 278 App.Div. 15, 103 N.Y.S.2d 1 (1951); Restatement, Torts § 924, comment (f).

25. McCormick on Damages § 90 (1935); Restatement, Torts § 924, comment (f); 128 A.L.R. 686, 687 (1940).

26. Bradburn v. Great Western R. R. Co., L.R. 10 Exch. 1, 44 L.J.Exch.N.S. 9, 31 L.T.N.S. 464, 23 Week.Rep. 48 (1874) (summarized 18 A.L.R. 678, 683); Johnson v. Kellam, 162 Va. 757, 175 S.E. 634, 636–637 (1934).

27. Sibley v. Nason, 196 Mass. 125, 81 N.E. 887, 12 L.R.A.,N.S., 1173 (1907); see Sutherland, Damages § 159 (1916). In the case of Patterson v. Springfield Traction Co., 178 Mo.App. 250, 163 S.W. 955, 960 (1914), where the injured party was merely insolvent but not bankrupt, the court allowed recovery.

28. Anderson v. Evans, 168 Neb. 373, 96 N.W.2d 44, 54–55 (1959); Houston & T. C. R. Co. v. Gerald, 60 Tex.Civ.App. 151, 128 S.W. 166, 170–71 (1910); Mueller v. Kuhn, 59 Ill.App. 353, 356 (1895).

29. McNair v. Manhattan Ry. Co., supra, note 24.

30. See cases cited in footnote 24. Moreover, New York may not even follow the majority rule to the extent of permitting recovery for medical expenses paid by friends and relatives or insurance. See Drinkwater v. Dinsmore, 80 N.Y. 390

that New York would follow the above-mentioned four cases.

■ Furthermore, the reasoning which supports recovery of medical expenses which the injured person will never pay does not apply to the present case. In personal injury cases the gist of the action is the damage to the plaintiff's person and the medical expenses are merely incidental,[31] whereas in the present case financial damage to the insured constitutes the basis of the cause of action.[32]

■ This case more closely resembles a suit for indemnity or contribution than one for medical expenses.[33] The New York cases hold that a person secondarily liable for a tort cannot get indemnity from one primarily liable by merely proving that he has suffered an adverse judgment. "The contract of indemnity implied by law in favor of one who is legally liable for the negligence of another covers loss or damage, and not mere liability." [34] Thus until the judgment is actually paid, there is no damage and no recovery.[35] Similarly, New York does not permit contribution until one joint tortfeasor has actually paid more than his pro rata share of a judgment against the joint tortfeasors.[36] Consequently, there is no support in the indemnity or contribution cases for a finding of damage here.

■ Our view is further buttressed by New York's holding in Cumming v. Hackley.[37] The plaintiff acted as an accommodation indorser of the defendant's note. After default the plaintiff gave the holder of the note a bond to guarantee payment. Since the plaintiff then received a discharge from his liability on the note and bond under the insolvency act, he was not permitted to recover from the maker. It is irrelevant that the plaintiff in Cumming would have profited had he been allowed to recover since there was no assurance that he would decide to pay the holder of the note, while in the present case the Massellos would not profit since any recovery would go to their trustee in bankruptcy and be used to pay their debts. The question is not whether the plaintiff will profit from recovery but whether he will be damaged by a denial of recovery. Since the Massellos have been discharged from paying the excess judgment, they, just like the plaintiff in the Cumming case, will not suffer any damages if recovery is denied.[38]

---

(1880); McCormick on Damages § 87 (1935); 128 A.L.R. 686, 692 (1940).

31. Sibley v. Nason, supra, note 27.

32. Lee v. Nationwide Mutual Ins. Co., 184 F.Supp. 634, 646 (D.Md.1960), reversed, 286 F.2d 295 (4 Cir. 1961); Case Note, 72 H.L.R. 568, 569 (1959).

33. See ibid.

34. Dunn v. Uvalde Asphalt Paving Co., 175 N.Y. 214, 218, 67 N.E. 439, 440 (1903).

35. Milstein v. City of Troy, 272 App.Div. 625, 74 N.Y.S.2d 892 (1947); Satta v. City of New York, 272 App.Div. 782, 69 N.Y.S.2d 653 (1947); Antonelli v. City of Mount Vernon, 20 Misc.2d 331, 189 N.Y.S.2d 52 (Sup.Ct.1959); Weiner v. Mager & Throne, Inc., 167 Misc. 338, 341–342, 3 N.Y.S.2d 918, 922 (Municipal Ct.1938); Cohen v. Dugan Bros., Inc., 134 Misc. 155, 235 N.Y.S. 118 (1929); Brown v. Mechanics and Traders' Bank,

16 App.Div. 207, 44 N.Y.S. 645 (1897); Restatement, Restitution § 77, comment (b).

36. New York Civil Practice Act, § 211–a; Bolkin v. Levy, 17 Misc.2d 56, 184 N.Y.S. 2d 461 (Sup.Ct.1959); Mongiovi v. Olna Realty Corp., 170 Misc. 403, 10 N.Y.S. 2d 528 (City Court of N.Y.1939); Miller v. Green, 176 Misc. 303, 26 N.Y.S. 2d 54 (Sup.Ct.1941).

37. 8 Johns 202 (N.Y.Sup.Ct. of Judicature 1811).

38. The cases of Decker v. Mathews, 12 N.Y. 313 (1855), and Metropolitan Elevated Ry. v. Kneeland, 120 N.Y. 140, 24 N.E. 381 (1890), cited by the plaintiff, are not inconsistent with Cumming. Since in the former two cases there was no evidence that the plaintiff could not pay the notes, the court acted properly in permitting recovery although they had not yet been paid.

■ Therefore, since the Massellos were insolvent before the excess judgment was rendered, have not paid any part of it, and have been discharged from any future obligation to pay it, their trustee has not shown any right to recover as the existence of the $89,000 judgment has not constituted any actual damage to them.

■ Even though there is no pecuniary loss to the Massellos, it may be argued that they have suffered injury to reputation and credit.[39] Although it is not clear whether such injuries are within the range of damages to be allowed for a bad faith refusal to settle,[40] the trustee, in his brief, argues that the excess judgment forced them into bankruptcy and that unless it is paid in full they will be unable to go back into business and establish their credit. We do not agree. The record makes it clear that nearly a year before the entry of Mrs. Van Suetendael's judgment the Massellos' two businesses were sold by the City Marshal of Yonkers at the request of creditors, that after the sale there were and still are unpaid debts owing by the Massellos totaling in excess of $12,000, that the Massellos had been employed as truck drivers immediately prior to their petition in bankruptcy, and that they had total assets of $200. The trustee introduced no testimony of any specific injury to the Massellos' credit or reputation. On such a record it is clear that there is no proof that the Massellos'

inability to pay the Van Suetendael judgment resulted in any damage to them.

■ One possible theory of damage remains. Without Mrs. Van Suetendael's excess judgment, the Massellos' creditors other than Mrs. Van Suetendael would have received the entire bankruptcy estate. Because she proved her claims in bankruptcy the other creditors will receive only about 12% of the Massellos' estate. Therefore, Standard's bad faith has damaged the other creditors by the amount of the decrease in assets which they will receive. It is not at all clear that under New York law Standard has any obligation to its insured's creditors upon which to found a liability to them for failure to settle in good faith.[41] Nor if New York created such a duty does there appear to be any provision in the bankruptcy act that empowers a trustee in bankruptcy to sue on such a cause of action which belongs to his bankrupt's creditors. However, because of the facts of this case, we need not even reach these questions. Since the Massellos' assets total only $200, we cannot suppose that after payment of the costs of administration, there would be anything remaining for distribution to the other creditors. Therefore, Mrs. Van Suetendael's claim will not reduce the dividends of the other creditors and they have not been damaged by Standard's bad faith.

As there has been no proof of damage, the judgment of the district court is reversed and the complaint is dismissed.

---

39. The only allegation as to damages in the complaint relates to the $105,000 judgment; there is no mention of injury to reputation and credit.

40. Compare Farmers' Insurance Exchange v. Henderson, 82 Ariz. 335, 313 P.2d 404, 408–409 (1957) (denying recovery for injury to reputation in an action against an insurer for bad faith refusal to settle), and Lee v. Nationwide Mutual Ins. Co., 184 F.Supp. 634, 646–647 (D.Md.1960), reversed, 286 F.2d 295 (4 Cir. 1961) (same), with Keeton, supra, note 3, at 1181 n. 110 (contra). New York does

not permit recovery for injury to reputation when an employee is discharged in breach of his contract, Sinclair v. Positype Corp., 237 App.Div. 525, 529, 261 N.Y.S. 900, 904–905 (1933), but does allow recovery for injury to reputation and credit in an action for malicious prosecution. E. g., Sheldon v. Carpenter, 4 N.Y. 579 (1851); Linitzky v. Gorman, 146 N.Y.S. 313, 317–318 (City Ct. of N.Y.1914).

41. See Wessing v. American Indemnity Co., 127 F.Supp. 775, 782–783 (W.D. Mo.1955).

J. JOSEPH SMITH, Circuit Judge (dissenting).

I respectfully dissent.

We are in the difficult position of attempting to predict how far the New York courts would go in setting the limits of recovery on a type of claim which they have indicated will be held good, but which they have not as yet actually enforced. If, as I feel, the New York courts would enforce the duty of an insurer in good faith to live up to his contract in the settlement of claims against the insured, I would expect them to do so with a view to the actualities of personal injury and death losses in our present society, and the interest of the injured in the proper functioning of our system of liability insurance of those from whose faults injuries may arise. I would not expect them to require that the insured establish payment or ability to make payment by him of a judgment against him in order to show a compensable loss in the situation here disclosed. The insurer has for a price agreed to insure him against liability to injured plaintiffs. This includes, as New York has stated, the duty to use good faith toward the insured in settlement negotiations. The finding of bad faith in the case at bar is amply supported by the record here.

New York has demonstrated an interest in preventing insurance companies from avoiding payment to injured parties to whom the insured is liable solely because of the insolvency of the insured. New York Insurance Law, § 167(1) (a) and (b).[1] It is true that the statute provision is keyed to the policy limits. When this legislation was originally enacted in 1917, however, the problem of bad faith refusal to settle had not become the live issue it is today. I can see no sound reason for allowing the insurer to invoke the defense to an action for breach of its duty to use good faith in settlement when it is denied the defense for actions for breach of the duty to pay within the policy limits. If the insured had remained solvent through the years between the injury in 1952 and the final bad faith refusal to settle and judgment for an amount in excess of the policy limits in 1957, the majority's requirement for showing of damage presumably could have been met. But suppose his net worth was 25 or 50% of the amount of the judgment? I am not clear whether actual payment would be required by the majority, or solely ability to pay, to establish damage. If we grant that the insured may have indemnity to some degree arising out of the policy because of bad faith refusal to settle within the stated limits, the "coverage of the policy or contract" within the meaning of the

1. "1. No policy or contract insuring against liability for injury to person, except as stated in subsection three, or against liability for injury to, or destruction of, property shall be issued or delivered in this state, unless it contains in substance the following provisions or provisions which are equally or more favorable to the insured and to judgment creditors so far as such provisions relate to judgment creditors:

"(a) A provision that the insolvency or bankruptcy of the person insured, or the insolvency of his estate, shall not release the insurer from the payment of damages for injury sustained or loss occasioned during the life of and within the coverage of such policy or contract.

"(b) A provision that in case judgment against the insured or his personal representative in an action brought to recover damages for injury sustained or loss or damage occasioned during the life of the policy or contract, shall remain unsatisfied at the expiration of thirty days from the serving of notice of entry of judgment upon the attorney for the insured, or upon the insured, and upon the insurer, then an action may, except during a stay or limited stay of execution against the insured on such judgment, be maintained against the insurer, under the terms of the policy or contract for the amount of such judgment not exceeding the amount of the applicable limit of coverage under such policy or contract."

**638**

statute may well in such a case be held to extend to the full amount of the judgment. In this situation the courts should not require an insured to show that he could meet the full amount of a judgment to establish damage from the insurer's tort. Here the insurer's contract, entered into for a consideration not only binds it to pay the face amount of the policy but also to use good faith in settlement efforts. If we say that there can be no damage to an insolvent from a tortious breach of the latter duty we not only depart from the spirit of New York's concern for the injured victim of an insured driver, but leave the insured himself with an illusory protection. The Massellos were in business during a good part of the period between the making of the insurance contract and its breach by defendant. Although there is evidence that they became insolvent by August 1956, the insurer had already refused to settle within the policy limits in April 1956. We do not know whether the pendency of the action affected their credit. The majority assumes that they were doomed to bankruptcy in any event. This is not certain. Bankruptcy followed only after entry of the judgment. If this judgment had not been entered against them bankruptcy might not have been necessary and its effect on their future business prospects might have been avoided. The damage may not be precisely measurable, but that circumstance should not allow the tortfeasor to go free. The insurer deliberately exposed its insured to the danger. It should not be heard to say that the great increase in the insured's debts caused by its action caused no damage because he might have had to go into bankruptcy in any event. Moreover, this view of the nature of damage from the breach of duty opens the distinct probability that the shaky financial condition of an insured will be used as an improper device for driving down settlements in serious injury and death cases below policy limits on threats of prolonged litigation at no risk to the insurer.

I would affirm the judgment.