Chief Judge Fuld (concurring).
I agree with Judge Bergan that the record before us is devoid of any evidence that defendant Nationwide acted in bad faith and, consequently, I too am for reversal and dismissal of the complaint. However, even were we to assume the existence of bad faith on the insurer’s part in refusing to settle within policy limits, I would still favor dismissal of the complaint on the ground that there was no showing that the insured, on whose behalf the plaintiff receiver is suing, suffered any actual damage.
There are, as noted in the dissenting opinion (pp. 448, 449), decisions in some jurisdictions which hold that an excess judgment entered against the insured measures the damages suffered by him even though he may be insolvent and the judgment uncollectible. I find such a rule both unreasonable and unfair. Recov *440 ery against an insurer should not be sanctioned or upheld as punishment or as a punitive measure. In my view, an insured is not harmed and, by that token, suffers no damage when an uncollectible judgment is entered against him. (Cf., e.g., Bourget v. Government Employees Ins. Co., 456 F. 2d 282; Harris v. Standard Ace. & Ins. Co., 297 F. 2d 627, 631-632, cert. den. 369 U. S. 843.) As the United States Court of Appeals for the Second Circuit wrote in Harris (297 F. 2d, at pp. 631-632),
“ The law of New York requires proof of actual loss to support recovery for a tort of this type. The purpose of tort damages is to compensate an injured person for a loss suffered and only for that. The law attempts to put the plaintiff in a position as nearly as possible equivalent to his position before the tort. Recovery is permitted not in order to penalize the tortfeasor, but only to give damages ‘ precisely commensurate with the injury. ’ [Gressman v. Morning Journal Assoc., 197 N. Y. 474, 480.] ”
And, just a few months ago, that same court, relying upon its decision in Harris, declared (per Friendly, C. J.) that “what gives rise to the [insurer’s] duty and measures its extent is the conflict between the insurer’s interest to pay less than the policy limits and the insured’s interest not to suffer liability for any judgment exceeding them. In the rare instance where the insured has no such interest, there can be no conflict and the duty does not arise.” (Bourget v. Government Employees Ins. Co., 456 F. 2d, at p. 285.)
In the case before us, it is clear beyond peradventure that the insured, in light of his financial standing and economic condition, could not have had either the interest or the motivation to prevent entry of a judgment in excess of policy limits. So far as appears, the insured’s only asset was his eight-year-old automobile which had been involved in the accident. He had been a gas station attendant, living in a basement apartment in a low rent area and, quite obviously, had no real credit standing in the community which could have been impaired or affected by the existence of a judgment against him. In point of fact, for all that appears, he may not even be alive; it is acknowledged that he has disappeared and that his whereabouts are completely *441 unknown. The suggestion that he may come into an inheritance or that he may embark on a successful business career ignores reality.
I do not suggest — although there are a number of decisions so holding—that an insured must pay the judgment before he, or another on his behalf, is able to proceed against a bad faith insurer. However, there must be some showing that he has been damaged. In the case before us, there is not the slightest evidence, or even intimation, that the insured was harmed by the judgment, that he had any assets which were imperiled or that either his reputation or credit was impaired.
In short, the complaint in this case should be dismissed not only because there is no evidence that the insurer acted in bad faith but also because there is no proof that the insured suffered any damage.