Betty J. EMIGH, individually and as Administratrix of the Estate of James R. Emigh, Plaintiff,

v.

CONSOLIDATED RAIL CORPORATION, Penn Central Corporation, Celotex Corporation, Durox Equipment Company, Garlock, Incorporated, Eagle–Picher Industries, and John Crane Company, Incorporated, Defendants.

Civ. A. No. 85–0085.

United States District Court,
W.D. Pennsylvania.

April 11, 1989.

Thomas J. Joyce, III, Brobyn & Forceno, Philadelphia, Pa., for plaintiff Betty J. Emigh.

David R. Johnson, Thomson, Rhodes & Cowie, Pittsburgh, Pa., for defendant Celotex Corp.

Harry M. Paras, Pittsburgh, Pa., for defendant John Crane Co., Inc.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Presently before us is plaintiff's Motion for a New Trial pursuant to Federal Rule of Civil Procedure 59(a). For the reasons stated below, we will deny plaintiff's motion.

## I. BACKGROUND

On January 15, 1983, James R. Emigh died from respiratory failure due to generalized metastasis from squamous cell carcinoma of the lung. From 1942 until 1982, Mr. Emigh had worked as an electrician, machinist, locomotive cleaner and laborer for the defendants Consolidated Rail Corporation and Penn Central Corporation ("Railroad Defendants") at the Conway, Pittsburgh and Pitcairn Shops. Two years after his death, on January 11, 1985, Mr. Emigh's wife, Betty J. Emigh, filed a complaint alleging that her husband's death resulted from forty years of occupational exposure to asbestos. She contended that under the Federal Employers' Liability Act, 1–10, as amended, 45 U.S.C. 51–60, the Railroad Defendants were negligent because they failed to adequately warn her husband of the dangers of asbestos exposure, failed to provide a safe working environment, and failed to implement procedures to minimize asbestos exposure. In addition, plaintiff sought to recover compensatory and punitive damages from other defendants, who were manufacturers and suppliers of asbestos, for injuries caused to her husband by exposure to their asbestos products. She claimed damages against these defendants under theories of strict liability, negligence, breach of warranty and misrepresentation.

On February 23, 1989, after six days of trial, the jury rendered a verdict on special interrogatories in which it found that exposure to asbestos was not a substantial factor contributing to James R. Emigh's lung cancer and death. Accordingly, judgment was entered in favor of the defendants and against the plaintiff.

Plaintiff now moves for a new trial on the grounds that prejudicial errors of law were made during the course of the trial. A motion for a new trial may be granted at the discretion of the court, *inter alia*, if the verdict is against the weight of the evidence, or if there are substantial errors of law in the admission or rejection of evidence. *Tevelson v. Life and Health Ins. Co. of America*, 643 F.Supp. 779, 782 (E.D.Pa.1986); 11 C. Wright & A. Miller, *Federal Practice and Procedure* 2805. The court may set aside the jury's verdict only if manifest injustice will result if the verdict is allowed to stand. *American Bearing Co. v. Litton Industries, Inc.*, 540 F.Supp. 1163, 1168 (E.D.Pa.1982), *aff'd*, 729 F.2d 943 (3d Cir.1984), *cert. denied* 469 U.S. 854, 105 S.Ct. 178, 83 L.Ed.2d 112 (1984).

In support of her motion for a new trial, plaintiff contends that the court erred in excluding the medical findings of Sang Yon Cho, M.D., and Seymour Piwoz, M.D., regarding the cause of Mr. Emigh's lung cancer and death. During the trial, plaintiff attempted to introduce this evidence through her live expert, William D. Fineman, M.D., arguing that he relied on these findings in forming his opinion pursuant to Rule 703 of the Federal Rules of Evidence ("Rule 703"). In her motion, plaintiff reiterates this argument, claiming that the exclusion of the evidence was prejudicial because if the jury had considered "plaintiff's pathological evidence through Dr. Fineman along with the clinical and epidemiological evidence ... that they would, in fact, have decided that from a preponderance of the evidence that asbestos exposure was a substantial factor contributing to James R.

Emigh's lung cancer and death." Plaintiff's Motion for a New Trial at 4.

During the trial, all parties offered expert testimony regarding the cause of Mr. Emigh's lung cancer and death. Plaintiff initially called William D. Fineman, M.D., who was qualified as a pulmonologist. Dr. Fineman had never actually interviewed or treated Mr. Emigh. Rather, Dr. Fineman testified that he based his opinion as to the cause of Mr. Emigh's death on Mr. Emigh's work history, chest x-rays and medical records from treating physicians. After examining these sources, Dr. Fineman concluded that Mr. Emigh's lung cancer and death were substantially caused by his exposure to asbestos. In addition, at trial, plaintiff's counsel attempted to elicit testimony from Dr. Fineman regarding the findings of Dr. Cho, a pathologist, and Dr. Piwoz, a radiologist. Like Dr. Fineman, Dr. Cho and Dr. Piwoz had never interviewed or examined Mr. Emigh.

Dr. Cho's findings were recorded in a three-paragraph letter addressed to the plaintiff's counsel, dated August 20, 1985. Plaintiff's Motion for a New Trial, Exhibit A. He wrote that after examining ten tissue slides of Mr. Emigh's lung made at the time of surgical lung operation, he found "several structures which are strongly suggestive of asbestos bodies," and that it was his "feeling that this patient's lung carcinoma is related to the presence of asbestos bodies."

Similarly, Dr. Piwoz's findings were contained in a two-paragraph letter addressed to Health Scan, Ltd., and dated April 18, 1986. Plaintiff's Motion for a New Trial, Exhibit B. He reviewed Mr. Emigh's posterior, anterior and lateral x-rays taken on September 16, 1982, and reported a mass in the left upper lobe, diffuse bilateral interstitial disease and extensive pleural plaquing. Dr. Piwoz concluded, "the presence of pleural plaquing and squamous cell carcinoma are consistent with asbestos related disease. This proved to be the cause of the patient's death."

Defendants objected to the admission of the medical reports on the ground that the out-of-court statements of these doctors constituted inadmissible hearsay and that the probative value of the reports was substantially outweighed by unfair prejudice to the defendants. Specifically, defendants argued that the findings of both doctors were contained in letters dated a few years after Mr. Emigh had died. Neither doctor had personally treated Mr. Emigh; rather these doctors were contacted by the plaintiff's lawyers after the commencement of the litigation. Moreover, neither of the doctors was present in court and available for cross examination as to their qualifications and findings. Finally, in accordance with pretrial requirements, Dr. Fineman had prepared two expert reports which disclosed the basis for his findings. However, neither report referred to the reports of Dr. Cho or Dr. Piwoz.

Plaintiff countered by arguing that she was not attempting to have the letters independently admitted as evidence. Rather, she sought to have the reports admitted as evidence which her live expert witness, Dr. Fineman, relied upon in forming his opinion pursuant to Rule 703.

The court sustained defendants' objections, holding that the reports failed to meet the minimum standards of reliability and were lacking in probative force. Since the opinions contained in the reports were speculative at best, rendering cross-examination a necessity, the court concluded that the likely harm to the defendants outweighed the probative value of the medical reports, and excluded the evidence pursuant to Rule 403 of the Federal Rules of Evidence ("Rule 403").

## II. DISCUSSION

### A. *Legal Standards*

 Initially, we note that the medical reports are not independently admissible under any exception to the hearsay rule. The proposed use of these reports would have incorporated into this proceeding the traditional "hearsay dangers." The doctors were not subject to cross-examination, and the defendants, as well as the jury, were unable to verify the reliability and

accuracy of the doctors' qualifications and opinions.

Plaintiff does not contest the hearsay nature of the medical reports; rather she asserts that Rule 703 permits her to introduce through her expert, the opinions of two out-of-court doctors who did not treat Mr. Emigh and who prepared the reports at her lawyer's request, because her expert relied on the reports in forming his opinion. Plaintiff's interpretation and reliance on Rule 703 for such a proposition is misplaced because it erroneously assumes that Rule 703 supersedes Rule 403. Rule 703 of the Federal Rules of Evidence provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

■ This rule expands the sources upon which an expert may rely in testifying to those "reasonably relied" upon by "experts in the particular field." *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 844 (3d Cir.1981), *cert. denied*, 454 U.S. 867, 102 S.Ct. 330, 70 L.Ed.2d 168 (1981). Common law permits an expert to testify on the basis of information obtained by personal observation or examination. For example, a physician who treats a patient may testify as to what his observations reveal. Rule 703 departs from the common law by enabling an expert to form an opinion based on facts or data that are not admissible in evidence. The modern view recognizes that a physician, for example, when making a diagnosis, often relies on many observations and tests performed and recorded by others. The rationale of Rule 703 is that records sufficient for diagnosis in the hospital ought to be sufficient for opinion testimony in the courtroom. Accordingly, Rule 703 was intended to "broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves

when not in court." Fed.R.Evid. 703 advisory committee's note.

Rule 703 does not specifically indicate whether the expert can disclose to the jury the underlying facts or data supporting his opinion when those sources are generally excluded from evidence. However, several courts, including the United States Court of Appeals for the Third Circuit, have allowed such disclosure, reasoning that it is necessary to insure that the jury has a basis for properly assessing the testimony. *Lewis v. Rego Co.*, 757 F.2d 66, 73–74 (3d Cir.1985); *United States v. McCollum*, 732 F.2d 1419, 1422–23 (9th Cir.1984), *cert. denied*, 469 U.S. 920, 105 S.Ct. 301, 83 L.Ed.2d 236 (1984); 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, 703(03), 703–25–27 (1988); S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual*, 671 (4th ed. 1986).

■ Although Rule 703 does permit an expert to disclose the underlying facts or data supporting his opinion, he may do so only if he reasonably relied upon those sources. The court must determine whether the facts or data are of the type reasonably relied upon by experts in the particular field in forming opinions. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 277 (3d Cir.1983), *rev'd on other grounds*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, the court may not substitute its own views as to what constitutes reasonable reliance; it must make a factual inquiry to determine what data experts in the field find reliable. *Japanese Electronic Products*, 723 F.2d at 277.

The reasonable reliance requirement of Rule 703 exists because the rule permits experts to rely upon and disclose hearsay. As such, Rule 703 is akin to an exception to the hearsay rule, and like all exceptions, full disclosure of the hearsay source underlying the testifying expert's opinion depends on its trustworthiness and reliability. *Id.* Rule 703 contemplates that experts often rely upon third party reports when making a decision and that this customary reliance is itself an extraneous indicia of trustworthiness sufficient to justify the dis-

pensing of cross-examination. *In re "Agent Orange" Product Liability Litigation*, 611 F.Supp. 1223, 1245 (E.D.N.Y. 1985). It is assumed that the expert, having met the expert qualification test of Rule 702, has the skill to properly evaluate the hearsay and assign it appropriate probative value. *Id.* at 1245.

However, we do not believe that the reasonable reliance requirement permits a court to relinquish its independent responsibilities to determine if the underlying source meets the most minimum standards of reliability and trustworthiness as a prerequisite to admissibility. *See* Fed.R.Evid. 104(a), 401, 403. J. Weinstein & M. Berger, *supra*, at 703–25–27. Although Rule 703 has greatly relaxed the law regarding the type of information on which an expert may base his opinion, it has not gone so far as to eliminate the requirement that an expert ground his opinion on reliable data rather than speculation. *Barrel of Fun, Inc. v. State Farm Fire & Cas. Co.*, 739 F.2d 1028, 1033 (5th Cir.1984).

■ We realize that, as a general rule, questions relating to the basis of an expert's opinion affect the weight and credibility to be assigned that opinion rather than its admissibility and should be left for the jury's consideration. Sometimes, however, the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that source. S. Saltzburg & K. Redden, *supra*, at 672. Accordingly, when the underlying source is so unreliable as to render it more prejudicial than probative, making it inadmissible under Rule 403, Rule 703 cannot be used as a backdoor to get the evidence before the jury.

## B. *Analysis*

■ We begin our analysis with a review of our decision to exclude the medical reports under Rule 403 which provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403 requires the court to balance the probative value and need for the evidence against the harm likely to result from its admission. A determination to exclude such evidence lies within the trial court's discretion. *Jackson v. Johns–Manville Sales Corp.*, 750 F.2d 1314, 1319 (5th Cir.1985). Although there is a slight presumption in favor of admitting relevant evidence, we believe that in this case, the prejudicial effect of admitting the reports is demonstrably greater than their relevance.

The probative value of the reports is minimal. Neither of the doctors treated the plaintiff, and neither doctor stated with any degree of medical certainty that Mr. Emigh's lung cancer was the result of asbestos-exposure. Dr. Cho opined that the tissue slides revealed "several structures which are strongly suggestive of asbestos bodies," and that it was his "feeling" that Mr. Emigh's "lung carcinoma was related to the presence of asbestos bodies." Plaintiff's Motion for a New Trial, Exhibit A. However, he never identified the "structures" or their significance, nor did he indicate whether he reviewed plaintiff's past history of cigarette smoking. In short, Dr. Cho's conclusions were vague and indefinite.

Similarly, Dr. Piwoz failed to review the plaintiff's medical history. He read three x-rays and a CT scan and concluded that, "the presence of pleural plaquing and squamous cell carcinoma are consistent with asbestos related disease. This proved to be the cause of the patient's death." Plaintiff's Motion for a New Trial, Exhibit B. Dr. Piwoz's conclusions are unsupported because there is no evidence that he considered critical information, such as the plaintiff's medical history and the other possible causes of disease.

The reports of both doctors lacked reliability because they were incomplete in a critical area; neither doctor mentioned anything about plaintiff's smoking history. This omission is startling because smoking may also cause squamous cell carcinoma of the lung. This is the sort of omission which would greatly prejudice the defen-

dants when they did not have the opportunity to cross-examine the two doctors. The doctors' failure to consider Mr. Emigh's smoking history seriously weakened their conclusions and, as a result, rendered their opinions unreliable sources as a foundation for Dr. Fineman's opinion.

On the other hand, the likely harm to the defendants in disclosing this evidence was great. Defendants were not aware that Dr. Fineman intended to testify as to these other medical reports because Dr. Fineman failed to state in his expert reports that he relied upon this information in rendering his diagnosis. Thus, defendants had no opportunity to investigate, expose and rebut any of Dr. Fineman's opinions based on these documents. Defendants were placed in the awkward position of having to await examination at trial to receive the basis of the experts' opinions. This would have resulted in prejudice to the defendants.

Moreover, the doctors were unavailable at trial, depriving the defendants an opportunity to cross-examine, and the jury an opportunity to evaluate the credibility of the doctors' demeanor and findings. Finally, the fact that the doctors rendered their findings at the request of the plaintiff's lawyers reduces the reliability and trustworthiness of their opinions when standing by themselves. Accordingly, we hold that the probative value of the proffered evidence was substantially outweighed by the possible prejudice to the defendants had the evidence been admitted.

Plaintiff's interpretation of Rule 703 would enable an attorney to request doctors to prepare medical reports for introduction at trial by one live expert. It is improper to use an expert in this fashion, and such a result would be inimical to the goal of trustworthiness and probity inherent in the hearsay exception rationale of Rule 703. Contrary to plaintiff's assertions, Rule 703 does not compel the admission of any evidence desired by a litigant simply because that otherwise inadmissible evidence can be fashioned by one expert witness into something he states he relied upon in reaching his opinion. *United States v. Mest*, 789 F.2d 1069, 1974 (4th Cir.1986).

## III. CONCLUSION

Plaintiff is not entitled to a new trial absent a showing of prejudicial error in the exclusion of evidence. We hold that the medical reports of Dr. Cho and Dr. Piwoz have little probative value and great potential harm and are thus inadmissible under Rule 403. In addition, their inadmissibility under Rule 403 makes them an unacceptable predicate for an opinion under Rule 703. Since there has been no error here, it would constitute an abuse of discretion to grant the motion. Accordingly, plaintiff's Motion for a New Trial is denied.

An appropriate Order will issue.