John E. VENN, as Trustee of the Estate of Fariss D. Kimbell, Jr., Plaintiff,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.

Civ. A. No. 89–30035/LAC.

United States District Court, N.D. Florida, Pensacola Division.

Oct. 25, 1994.

Leff Mabie, Pensacola, FL, Jonathan Sjostrom and Talbot D'Alemberte, Miami, FL, George Estees, Pensacola, FL, for plaintiff.

E. Clay Parker, Orlando, FL, Gus Small, Atlanta, GA, for defendant.

### ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW; MOTION FOR NEW TRIAL; AND MOTION TO ALTER OR AMEND JUDGMENT

COLLIER, District Judge.

Defendant has moved for judgment as a matter of law, or in the alternative, new trial, or in the alternative, to alter or amend the judgment. The question has been briefed exhaustively by both parties. Upon review of the parties' briefs and the relevant authority, the Court concludes that Defendant is not entitled to judgment as a matter of law, or to a new trial, or to alter or amend the judgment.

### I. *Background*

The history of this case goes back ten years and involves the participation of seven different courts and twenty-five different judges. It arises out of a medical malpractice suit filed in state court in late 1984 by Anna Rue Camp against Dr. Fariss Kimbell. At the time, Dr. Kimbell was insured by St. Paul Fire and Marine Insurance Company (St. Paul) under a medical malpractice policy with a limit of $250,000.

In July, 1986, Dr. Kimbell filed Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Florida. Mrs. Camp's state lawsuit was halted pursuant to the automatic stay required by 11

U.S.C. § 362 (1988). Before Dr. Kimbell filed for bankruptcy, St. Paul rejected two offers from Mrs. Camp to settle the suit for the policy limits. St. Paul rejected a third settlement offer shortly after Dr. Kimbell filed for bankruptcy.

On November 26, 1986, the bankruptcy court granted a discharge that shielded Dr. Kimbell from personal liability for any claims pending against him. In April, 1987, the bankruptcy court authorized Mrs. Camp to continue her suit against Dr. Kimbell in order to liquidate the claim. At the same time, the bankruptcy court ruled that Dr. Kimbell would not be personally liable for any judgment Mrs. Camp obtained against him in state court.

Following Dr. Kimbell's bankruptcy, St. Paul sought the advice of its legal counsel Elmo Hoffman and Frank Bozeman regarding the effect of the bankruptcy on St. Paul's duty of good faith in settling Mrs. Camp's claim. Hoffman and Bozeman advised St. Paul that, although there were no cases directly on point, St. Paul would probably not be found liable for bad faith because Dr. Kimbell could no longer be financially harmed by a judgment.

In May, 1987, Mrs. Camp tendered her fourth offer to settle for the policy limits. St. Paul refused to settle, and the case proceeded to trial. At trial, the jury returned a verdict for Mrs. Camp in excess of three million dollars. *See Kimbell v. Camp*, 532 So.2d 1061 (Fla. 1st DCA 1988) (affirming judgment on appeal). The bankruptcy court ordered that the excess judgment be classified as a general, non-priority unsecured claim against Dr. Kimbell's bankruptcy estate. Pursuant to Section 55.154, Florida Statutes (1991), the state trial court granted Dr. Kimbell's motion for an order cancelling and discharging the three-million-dollar judgment. This order had the same effect as a satisfaction of judgment by Dr. Kimbell personally.

Mrs. Camp and Dr. Kimbell's bankruptcy trustee, John E. Venn, next filed a bad faith action against St. Paul in state court, alleging that St. Paul failed to settle the medical malpractice claim in good faith. The bad faith claim was ultimately removed to the United States District Court for the Northern District of Florida, where Judge Roger Vinson granted summary judgment for St. Paul.

Relying on *Fidelity and Casualty Company v. Cope*, 462 So.2d 459 (Fla.1985), Judge Vinson found that Dr. Kimbell's bankruptcy discharge extinguished any bad faith claim against St. Paul. In *Cope*, the Florida Supreme Court held that an injured third-party who had secured an excess judgment could not maintain a bad faith claim against the insurer when the injured party has executed a release of his claim against the tortfeasor. *Id.* at 461. The court found that the third-party's cause of action was "not separate and distinct from, but was derivative of" the insured's. *Id.* As a result, a satisfaction and/or release of the insured extinguishes the third party's cause of action. *See also Clement v. Prudential Property & Casualty Co.*, 790 F.2d 1545 (11th Cir.1986) (Eleventh Circuit adopting *Cope*).

Applying *Cope*, Judge Vinson reasoned that any bad faith cause of action owned by the bankruptcy estate was derivative of Dr. Kimbell's bad faith cause of action. Dr. Kimbell did not have a valid bad faith cause of action because, due to his bankruptcy discharge, he was not "damaged" by St. Paul's refusal to settle the malpractice claim. Judge Vinson reasoned that the duty of good faith ran to the insured, not the bankruptcy estate. Therefore, the bankruptcy estate did not have a valid cause of action.

On appeal, the United States Court of Appeals for the Eleventh Circuit found the question to be an issue of first impression under Florida law. *Camp v. St. Paul Fire and Marine Ins. Co.*, 958 F.2d 340 (11th Cir.1992) ("*Camp I*"). The court therefore certified the following questions of law to the Florida Supreme Court:

(1) WHETHER, AS A MATTER OF LAW, A NAMED INSURED'S BANKRUPTCY AND DISCHARGE FROM LIABILITY PRIOR TO EXPOSURE TO AN EXCESS JUDGMENT, SUCH THAT THE NAMED INSURED WAS NEVER PERSONALLY LIABLE FOR ANY AMOUNT OF THE JUDGMENT, PRE-

CLUDES AN INJURED PARTY'S OR BANKRUPTCY TRUSTEE'S SUBSEQUENT BAD FAITH CAUSE OF ACTION AGAINST AN INSURANCE COMPANY.

(2) WHETHER, AS A MATTER OF LAW, THE LANGUAGE OF A BANKRUPTCY CLAUSE IN A PARTICULAR INSURANCE POLICY, SUCH AS THE LANGUAGE AT ISSUE IN THIS CASE, CAN AUTHORIZE AN INJURED PARTY'S OR BANKRUPTCY TRUSTEE'S BAD FAITH ACTION AGAINST AN INSURANCE COMPANY, NOTWITHSTANDING THE FACT THAT THE NAMED INSURED WAS NEVER PERSONALLY LIABLE FOR ANY AMOUNT OF AN EXCESS JUDGMENT DUE TO THE NAMED INSURED'S BANKRUPTCY.

*Id.* at 344.

The Florida Supreme Court answered the questions by holding that a bankruptcy trustee may bring an action against the bankrupt's insurance company for the bad faith failure to settle a claim. *Camp v. St. Paul Fire & Marine Ins. Co.,* 616 So.2d 12 (Fla. 1993) (*"Camp II"*). The court reasoned that from the time Dr. Kimbell declared bankruptcy, St. Paul owed a duty of good faith to the bankruptcy estate, and not to Dr. Kimbell. "The bankruptcy estate stood in the shoes of the debtor and, in effect, the estate became the insured." *Id.* at 15. The court rejected its own previous analysis in *Cope,* and held that while there was no damage to Dr. Kimbell, there was damage to his bankruptcy estate. The court held:

> "The excess judgment against Dr. Kimbell harmed his bankruptcy estate by increasing the debt of the estate to the detriment of its creditors. The estate was damaged by the addition of Mrs. Camp as an additional unsecured creditor, a result that could have been avoided if St. Paul had settled her claim. As the trustee of the bankruptcy estate, Mr. Venn acted properly in filing a bad faith claim to recoup the excess judgment for which the estate remains liable."

Therefore, Venn, as trustee of the bankruptcy estate, could bring a bad faith cause of action for harm done to the estate by St. Paul's alleged bad faith. For reasons discussed later, this logic is flawed.

The Eleventh Circuit then reversed Judge Vinson's summary judgment order and remanded the case to be tried consistent with the Florida Supreme Court's opinion. *Camp v. St. Paul Fire And Marine Ins. Co.,* 989 F.2d 428 (11th Cir.1993) (*"Camp III"*). The Eleventh Circuit also affirmed the dismissal of Anna Rue Camp as a plaintiff in the bad faith action, reasoning that under the Florida Supreme Court's opinion, the duty of good faith ran only to the bankruptcy trustee, Venn, and not to Mrs. Camp. *Id.*

St. Paul next petitioned the United States Supreme Court for a writ of certiorari, which was denied. *St. Paul Fire and Marine Ins. Co. v. Camp,* —— U.S. ——, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993).

Accordingly, the case returned to Judge Vinson and was set for trial. Before trial, Judge Vinson heard arguments and issued an order addressing the proper measurement of compensatory damages. Judge Vinson held that the Florida Supreme Court had already answered that question by implication in its opinion. According to the Florida Supreme Court, "[t]he excess judgment against Dr. Kimbell harmed his bankruptcy estate by increasing the debt of the estate to the detriment of its creditors," *Camp II,* 616 So.2d at 15. Judge Vinson felt this language in the opinion necessarily fixed the measure of compensatory damages as the amount of the excess judgment—$2,784,942.66.

Subsequently, Judge Vinson denied Plaintiff's motion for continuance and motion for reconsideration. Plaintiff then moved for Judge Vinson to disqualify himself from the case. Judge Vinson denied the motion, but recused himself because he found that the filing of Plaintiff's motion and supporting affidavits forced him to consider the possible professional misconduct involved and his duty to report the responsible attorneys.

Trial commenced before this court on July 18, 1994. The jury returned a verdict finding that St. Paul "acted in bad faith by not settling the medical malpractice claim against Dr. Kimbell." As instructed, the jury award-

ed compensatory damages to Plaintiff in the amount of $2,784,942.66. Defendant timely filed these motions pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.

## II. *Motion for Judgment as a Matter of Law*

A motion for judgment as a matter of law can only be granted when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue ..." Fed.R.Civ.P. 50. In *Rabun v. Kimberly–Clark Corp.*, 678 F.2d 1053, 1057 (11th Cir. 1982), the Eleventh Circuit explained the standard as:

> "Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached."

(quoting Charles A. Wright & Arthur R. Miller, 9 *Federal Practice and Procedure: Civil* § 2524 at 545–546 (1981)). The court concludes there was sufficient evidence in this case to support the jury's verdict.

However, the court must point out that its holding in this case is dictated by the Florida Supreme Court's inherently flawed and practically unworkable decision in *Camp II*, 616 So.2d at 12. Despite its defective reasoning, this court is bound to attempt to follow that decision as a result of the Eleventh Circuit's mandate in *Camp III*, 989 F.2d at 428. Nonetheless, this court is compelled to discuss some of the problems with that decision.

### A) *Problems With Camp II*

First, *Camp II's* holding that the bankruptcy estate "stood in the shoes of the debtor and, in effect ... became the insured," simply does not work in the real world. *Camp II*, 616 So.2d at 15. The bankruptcy estate and the insured cannot stand in the same shoes. Their interests are different, and even at odds with one another. An insured who is being sued is interested in having the lowest possible judgment entered

against him or her to limit any exposure to an excess judgment. A bankruptcy trustee, on the other hand, is bound by fiduciary duty to get as much money as possible into the estate in order to pay off creditors. Here, Dr. Kimbell's bankruptcy estate was a "no asset" case. The unsecured creditors had no hope of ever being paid. The trustee's only hope of getting money into the estate was for an excess judgment to be entered against Dr. Kimbell, so that the estate could pursue a bad faith claim against St. Paul. While Dr. Kimbell's interest was to settle, the trustee's interest was to oppose settlement because a settlement extinguished any hope of funding the bankruptcy estate.

Because of these opposing interests, an insurance company is put in an impossible situation when both the bankruptcy estate and the insured "stand in the same shoes." If the insurance company settles the claim, it has acted in good faith toward the insured, but has also extinguished all hopes of funding the bankruptcy estate. If, on the other hand, the insurance company refuses to settle the claim, it has benefited the bankruptcy estate greatly, but has also acted in bad faith toward the insured.[1]

Further, even if an insurance company can figure out to whom its duty of good faith is owed, it can never be sure when it is owed. For example, in 1986, St. Paul believed it owed a duty of good faith to its insured, Dr. Kimbell. In deciding whether or not to settle the claim against him, St. Paul considered Dr. Kimbell's interests only. In *Camp II*, however, the Florida Supreme Court held that the bankruptcy trustee can sue St. Paul because its 1986 conduct damaged the bankruptcy estate. *Id.* Therefore, in 1986, St. Paul simultaneously owed a duty to Dr. Kimbell and his bankruptcy estate.

Moreover, the first three times St. Paul rejected offers to settle from Mr. Camp, Dr. Kimbell had not yet declared bankruptcy, i.e. the bankruptcy estate had not yet been created. Thus, *Camp II* holds St. Paul liable for breaching a duty of good faith owed to an

---

1. Paradoxically, St. Paul has now been found liable for bad faith against the bankruptcy estate for committing an act that benefitted the estate— refusing to settle Dr. Kimbell's malpractice

claim. In contrast, if St. Paul had settled the case, (presumably an act of good faith toward the estate) the estate would have had no opportunity to pay its creditors.

entity which did not exist when portions of the breach occurred. The practical result of *Camp II* is to require the insurance company not only to act in good faith toward its insured, but also to predict the insured's bankruptcy and act in the best interests of a future bankruptcy estate. As a practical matter, this is impossible.

Second, *Camp II* violates federal bankruptcy precedent that indicates Dr. Kimbell's cause of action for bad faith never became the property of the bankruptcy estate in the first place. Section 541(a)(1) of the Bankruptcy Code provides that the bankruptcy estate owns "... all legal or equitable interests of the debtor in property as of the commencement of the case." It is well settled that bankruptcy estate property includes all causes of action held by the debtor *at the time the bankruptcy petition is filed. Jones v. Harrell,* 858 F.2d 667, 669 (11th Cir.1988); *Romano v. American Casualty,* 834 F.2d 968, 969 (11th Cir.1987).

■ Dr. Kimbell did not have a cognizable cause of action for bad faith on the date he filed for bankruptcy. Under Florida law a cause of action for bad faith does not arise until the insured is legally obligated to pay the excess judgment. *Blanchard v. State Farm,* 575 So.2d 1289 (Fla1991); *Kelly v. Williams,* 411 So.2d 902 (Fla. 5th DCA), *rev. denied,* 419 So.2d 1198 (Fla.1982). On the date Dr. Kimbell filed for bankruptcy, the medical malpractice suit against him had not yet been to trial, and he was certainly not obligated to pay any judgment. In fact, Dr. Kimbell never became obligated to pay the judgment due to his bankruptcy discharge. Therefore, no cause of action existed, and no cause of action could have passed to the bankruptcy estate.

In departing from federal bankruptcy precedent, the Florida Supreme Court relied upon *Palmer v. Travelers Insurance Company,* 319 F.2d 296 (5th Cir.1963). A close reading indicates that *Palmer* does not squarely support the proposition for which it is cited. The Florida Supreme Court held:

"[w]hatever claims—*including potential and contingent claims*—that the bankrupt owns at the time of his petition, becomes a part of his estate, with title thereto in the Trustee."

*Camp II,* 616 So.2d at 15 (*quoting Palmer,* 319 F.2d at 299) (emphasis added).

The facts of *Palmer* simply do not support the contention that the estate owns "potential and contingent" claims of the bankrupt. In *Palmer,* an insurance company's refusal to settle a case resulted in an excess judgment against the insured, which, in turn, caused the insured to declare bankruptcy. Therefore, at the time the insured filed for bankruptcy, he was already legally obligated to pay the excess judgment, and a cause of action for bad faith already existed. The insured's cause of action was neither "potential" nor "contingent."

*Palmer* is entirely different from the chain of events in this case. Here, Dr. Kimbell declared bankruptcy *before* the judgment was entered against him. The excess judgment did not cause Dr. Kimbell's bankruptcy. The distinction is crucial. The insured in *Palmer* had a valid cause of action when he filed for bankruptcy; Dr. Kimbell did not. *Palmer* does not support the proposition that Dr. Kimbell's bankruptcy estate owns his cause of action for bad faith against St. Paul. Nonetheless, this court must follow the Eleventh Circuit's mandate to accept that proposition.

Third, *Camp II's* holding that the bankruptcy estate was damaged by the addition of Mrs. Camp as an unsecured creditor defies logic and common sense. According to the Florida Supreme Court, "[t]he excess judgment against Dr. Kimbell harmed his bankruptcy estate by increasing the debt of the estate to the detriment of its creditors." *Camp,* 616 So.2d at 15. However, Dr. Kimbell's bankruptcy estate was a "no asset" case. The estate contained approximately $3,000, which was not even enough to cover administration costs. The estate creditors had no hope of being paid. Before the addition of Mrs. Camp's $2.7 million claim, the estate owed $300,000 and the creditors received nothing. After the addition of Mrs. Camp's claim, the estate owed $3 million, and the creditors still received nothing. The addition of Mrs. Camp's claim made absolutely no difference to the other estate creditors.

Simply put, there never has been, nor could there ever be any damage to Dr. Kimbell's creditor's brought on by the "addition of Mrs. Camp as an unsecured creditor." *Id.*

The United States Court of Appeals for Second Circuit faced a similar problem in *Harris v. Standard Accident and Insurance Company,* 297 F.2d 627 (2nd Cir.1961), *cert. denied* 369 U.S. 843, 82 S.Ct. 875, 7 L.Ed.2d 847 (1962). There, a judgment of $105,000 was entered against an insured after his insurer failed to settle a personal injury claim against him. Before the judgment was entered, the insured declared bankruptcy. Following the tender by the insurer of the insured's policy limits, an excess judgment remained to be collected, for which the bankruptcy trustee brought suit against the insurer.

Like the bankruptcy trustee in this case, the trustee in *Harris* argued that the insured had been damaged because the excess judgment harmed the bankruptcy estate by reducing the dividend distribution to each creditor. The *Harris* court found that because no dividend distribution was to be made to the estate's creditor's, no compensable damage was suffered by the estate's creditors. *Id.* at 636. The court explained:

> "Since the Massello's assets total only $200, we cannot suppose that after payment of the costs of administration, there would be anything remaining for distribution to the other creditors. Therefore, Mrs. Van Suetendel's claim will not reduce the dividends to the other creditors and they have not been damaged by Standard's bad faith."

*Id.*

The same is true in this case. Although the point may have been lost on the Florida Supreme Court, nothing plus nothing still equals nothing. Despite the absence of any real damage to Dr. Kimbell's bankruptcy estate, the Florida Supreme Court's opinion requires St. Paul to pay some $2.7 million in damages, a result this court finds absurd.

St. Paul raises many of these arguments in its memorandum arguing that it is entitled to judgment as a matter of law. Despite problems with the logic of *Camp II,* this court cannot overrule the Eleventh Circuit mandate to follow it. Therefore, none of these arguments provide a basis for granting St. Paul's motion. The result of this case, however troubling, is the only viable application of the Florida Supreme Court's opinion.

### B) *Applying Camp II at Trial*

■ Additionally, St. Paul argues that its motion for judgment as a matter of law should be granted because of several alleged errors in interpreting and applying *Camp II* at trial. Specifically, St. Paul believes that, as *Camp II* creates a cause of action for breach of a duty of good faith owed to the bankruptcy estate, no evidence regarding St. Paul's treatment of Dr. Kimbell should have been admitted. Plaintiff introduced evidence of four settlement offers from Anna Rue Camp, all of which St. Paul rejected. Three of these settlement offers were made before Dr. Kimbell declared bankruptcy. According to St. Paul, all this evidence dealt with a breach of the duty of good faith owed to *Dr. Kimbell,* not to the bankruptcy estate. Likewise, St. Paul maintains that any evidence regarding actions occurring before Dr. Kimbell declared bankruptcy is irrelevant because St. Paul could not have breached any duty owed to the bankruptcy estate before the bankruptcy estate was created.

St. Paul's argument illustrates the difficulty of applying the cause of action envisioned in *Camp II.* The court will attempt to explain it. Clearly, the Florida Supreme Court believed that Dr. Kimbell had a cause of action for bad faith against St. Paul, and that the bankruptcy estate took title to that cause of action. The court held:

> "The bankruptcy estate stood in the shoes of the debtor and, in effect, the estate became the insured. "[W]hatever claim—including potential and contingent claims—that the bankrupt owns at the time of his petition becomes a part of his estate, with title thereto vested in the trustee." [citations omitted] ... Therefore, as explained above, we determine that an action for bad faith may be claimed by the trustee of Kimbell's bankruptcy estate against St. Paul."

*Camp II,* 616 So.2d at 15. Therefore, the Florida Supreme Court must intend for the bankruptcy trustee to litigate Dr. Kimbell's cause of action on his behalf. Presumably, the trustee must prove all the elements Dr. Kimbell would have to prove, and can introduce all the evidence Dr. Kimbell himself could introduce if he were bringing the action.

However, the Florida Supreme court does not intend the trustee to recover Dr. Kimbell's damages, or even to prove Dr. Kimbell suffered any damages. Instead, the Florida Supreme Court intends the bankruptcy estate to recover the damage that it suffered, which it presumes as a matter of law, are equal to the excess judgment. The court held:

> "The estate was damaged by the addition of Mrs. Camp as an additional unsecured creditor, a result that could have been avoided if St. Paul had settled her claim. As the trustee of the bankruptcy estate, Mr. Venn acted properly in filing a bad faith action to recoup the excess judgment for which the estate remains liable."

*Id.*

The result is a strange and unprecedented cause of action, not easily reduced to a written formula. It can be argued that *Camp II* creates a duty owed to the bankruptcy estate which flows through Dr. Kimbell, or it can be argued that *Camp II* creates duty owed to Dr. Kimbell which flows through the bankruptcy estate. The bottom line is that the bankruptcy trustee is entitled to recover the amount of the excess judgment by proving that St. Paul acted in bad faith toward Dr. Kimbell. While the duty of good faith may theoretically be owed to the bankruptcy estate, it is measured by how St. Paul treats Dr. Kimbell (except with respect to damages). Therefore, the sole question for the jury is whether St. Paul acted in bad faith toward Dr. Kimbell by not settling his medical malpractice claim. If the jury answers "yes," as it did here, the bankruptcy trustee is automatically awarded the amount of the excess judgment, as it was here.

■ Therefore, the court rejects St. Paul's argument that there was no evidence introduced that it acted in bad faith toward the bankruptcy estate. As envisioned by the Florida Supreme Court, evidence of bad faith toward Dr. Kimbell is evidence of bad faith toward the estate. Likewise, evidence of actions occurring before the bankruptcy estate was created is not irrelevant. Under *Camp II,* this evidence is part of the bankruptcy estate's cause of action. The court cannot grant St. Paul's motion on these grounds.

### C) *Sufficiency of Expert Testimony*

■ St. Paul also argues that it is entitled to judgment as a matter of law because the Plaintiff introduced no credible evidence to prove the legal opinions of Elmo R. Hoffman and Frank Bozeman were not reasonable and correct under the state and federal law as it existed in 1987. Thus, Plaintiff did not prove it was unreasonable for St. Paul to rely on these opinions in deciding not to settle Mrs. Camp's malpractice claim.

The court cannot agree. During trial, Plaintiffs presented the testimony of attorneys Ted Wells and Gilbert Haddad. These "expert witnesses" testified that the Florida Supreme Court's bizarre opinion in *Camp II* was a predictable result of Florida and federal bankruptcy law, and that St. Paul was unreasonable in accepting the opinions of Hoffman and Bozeman, who did not foresee it. Quite frankly, the court finds the testimony of these paid experts to be ludicrous. Nevertheless, under the standard of review here, it was sufficient to support the jury verdict. *See* Fed.R.Civ.P. 50; *Rabun,* 678 F.2d at 1057. Plaintiff is therefore not entitled to judgment as a matter of law.

### II. *Motion for New Trial*

A Motion for New Trial can be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States ..." Fed.R.Civ.P. 59(a). Elsewhere, the standard has been explained,

> "[T]he general grounds for a new trial are that the verdict is against the weight of the evidence, that the damages are excessive, or that for other reasons the trial was not fair, and that the motion may also raise

questions of law arising out of substantial errors in the admission or rejection of evidence or the giving or refusal of instructions."

Charles A. Wright & Arthur R. Miller, 11 *Federal Practice and Procedure: Civil* § 2805 at 37–38 (1973). The court concludes that St. Paul is not entitled to a new trial.

■ St. Paul first argues that the court erred in granting Plaintiff's motion in limine to exclude any mention of Judge Vinson's summary judgment order, and the opinions of the Eleventh Circuit and the Supreme Court of Florida in this case. St. Paul believes the inability to introduce these opinions prevented it from giving a detailed explanation of its conduct and good faith. Specifically, St. Paul was not able to show, (1) that under the law in 1987, St. Paul only owed a duty to Dr. Kimbell, (2) under that law, Dr. Kimbell was not harmed by St. Paul's conduct, (3) it was reasonable for St. Paul to have relied on that law because Judge Vinson, in a reported opinion, also believed St. Paul acted properly, (4) that the Supreme Court of Florida effectively changed the law six years after St. Paul first relied upon the opinions of its counsel, and (5) that it was unreasonable to expect St. Paul to predict that the Supreme Court of Florida would change the law as it did.

The court concludes, as it did at trial, that evidence of Judge Vinson's order and the appellate opinions in this case is irrelevant to the main jury issue—whether St. Paul acted in good faith in refusing to settle Mrs. Camp's claim. Judge Vinson's order and the appellate opinions were decided years after St. Paul refused to settle the claim. The opinions were not a factor in St. Paul's decision, and their exclusion is not grounds for a new trial.

■ St. Paul next argues that it is entitled to a new trial because it should have been allowed to introduce Judge Vinson's summary judgment order to rebut the testimony of Plaintiff's expert witness Gilbert Haddad, who testified that it was unreasonable for St. Paul to have relied on the legal opinions of Elmo R. Hoffman and Frank Bozeman in refusing to settle the Camp claim. St. Paul argues that it should have been allowed to show Judge Vinson also agreed with Hoffman and Bozeman to prove their legal opinions were not unreasonable.

The court disagrees. At trial, the court forced Mr. Haddad to admit that he was aware of published legal authority that agreed with the opinions of Hoffman and Bozeman. This disguised reference to Judge Vinson's order communicated the same message to the jury. The court concludes that this claim does not merit a new trial.

■ St. Paul next argues that the testimony of Plaintiff's expert Ted L. Wells concerning St. Paul's employee bonus program was prejudicial and warrants a new trial. Wells testified that St. Paul had a bonus program for senior employees, which in his opinion created a conflict of interest between St. Paul's duty to its insureds and the desire of its employees to make more money. According to St. Paul, this testimony was improper because it was the only evidence of such a bonus program. Therefore, it improperly served as substantive evidence rather than expert opinion evidence.

■ The court disagrees. Expert witnesses can rely upon facts not in evidence, and even inadmissible evidence in forming their opinions. *Emigh v. Consolidated Rail Corp.,* 710 F.Supp. 608, 611 (W.D.Penn.1989). Further, the expert can disclose these facts to the jury so long as they are of the type reasonably relied upon by experts in forming their opinions, and the trial judge determines they meet minimum standards of trustworthiness and reliability. *Id.* at 612. In this case, the court questioned Mr. Wells at length outside the presence of the jury regarding the factual basis of his testimony. After determining the factual basis was sufficient, the court also limited Mr. Wells's testimony to insure no unfair prejudice resulted. Further, Mr. Wells testified that the bonus program only applied to senior employees, and that the employees who made the decision not to settle Mrs. Camp's claim were not eligible for the bonus program. The court concludes that no error occurred warranting a new trial.

St. Paul next argues again that Plaintiff produced no credible evidence to prove that the legal opinions of Elmo R. Hoffman and Frank Bozeman given to St. Paul in 1987 were not reasonable under the law as it existed at that time. St. Paul raised the same argument in support of its motion for judgment as a matter of law. For the same reasons that argument was rejected, the court also concludes the argument does not support a new trial.

St. Paul next argues that a new trial is appropriate because the court denied its motion in limine to exclude evidence of St. Paul's pre-bankruptcy conduct. As discussed earlier, pre-bankruptcy conduct is part of the cause of action that must have been envisioned by the Florida Supreme Court in *Camp II,* 616 So.2d at 15. For this reason, the court cannot grant a new trial.

St. Paul next asserts that the court should have given the jury more latitude in determining the amount of damages suffered by the bankruptcy estate. According to St. Paul, the uncontroverted evidence showed the bankruptcy estate was not damaged at all by St. Paul's bad faith. Again, the court agrees that the bankruptcy estate was not damaged. Unfortunately, the Florida Supreme Court does not. *Camp II* fixes the damages as the amount of the excess judgment. 616 So.2d at 15. Under *Camp II,* St. Paul is not entitled to new trial on these grounds.

St. Paul next argues that a series of jury instruction errors were made that entitles it to a new trial. While acknowledging that formulating *Camp II* into jury instructions was a difficult matter, the court concludes that it was done properly and in the only practical way.

■ First, St. Paul maintains that an instruction should have been given that "Dr. Kimbell was not harmed in any way by St. Paul's refusal to settle Mrs. Camp's lawsuit." The court concludes that this instruction was unnecessary and would have confused the jury. Under *Camp II,* it does not matter that Dr. Kimbell was never personally harmed by the excess judgment. In allowing an excess judgment to be entered, St. Paul harmed the bankruptcy estate (according to the Florida Supreme Court).

■ Second, St. Paul argues an instruction should have been given that "Mr. Hoffman's advice was reasonable when given and that St. Paul had the right to rely on it." Such an instruction would have invaded the fact finding province of the jury. The jury heard conflicting evidence regarding the reasonableness of Mr. Hoffman's 1987 opinion and St. Paul's reliance upon it. An instruction requiring the jury to accept St. Paul's interpretation of the facts would have been improper.

■ Third, St. Paul believes the jury should have been instructed, "on July 11, 1986, Dr. Kimbell's Bankruptcy Estate became the insured and that on that date, St. Paul's duty of good faith was owed to the bankruptcy estate and to no one else." The court concludes this instruction also would have confused the jury. Under *Camp II,* although the duty of good faith is theoretically owed to the bankruptcy estate, it is measured by the actions toward the insured. Therefore, the main jury issue was whether St. Paul acted in bad faith toward Dr. Kimbell.

■ Fourth, St. Paul argues that the jury should have been instructed that "St. Paul's refusal to settle Mrs. Camp's lawsuit did not cause Dr. Kimbell to file Chapter 7 bankruptcy." This instruction was also unnecessary. The cause of Dr. Kimbell's bankruptcy was not an issue in the case. The court announced at the beginning of the trial that Plaintiff could not introduce any evidence of the cause of Dr. Kimbell's bankruptcy. Plaintiff refrained from doing so. To interject this instruction at the end would have unnecessarily confused the jury.

■ Fifth, St. Paul maintains that the jury should have been instructed that "St. Paul did not owe a duty of good faith to Mrs. Camp and that St. Paul did not owe a duty of good faith to anyone other than the Bankruptcy Estate." According to St. Paul, because of the evidence presented regarding Mrs. Camp's injuries, the jury may have believed St. Paul breached some duty owed to her. St. Paul's argument here is based on

mere speculation. Again, this instruction was unnecessary and would have confused the jury.

Sixth, St. Paul argues that the trial court erred in instructing the jury that Dr. Kimbell was "the insured." The jury instruction provided:

> The Plaintiff in this case is John Venn, the trustee of the bankruptcy estate of Dr. Fariss Kimbell. The Plaintiff claims that the Defendant, St. Paul, acted in bad faith when it refused to settle a medical malpractice claim *against its insured, Dr. Kimbell.* It is your duty to determine whether the Plaintiff has proven by the greater weight of the evidence that St. Paul acted in bad faith.

(emphasis added). St. Paul argues that under *Camp II* and *Camp III*, the bankruptcy estate is the insured, not Dr. Kimbell. As discussed, under the cause of action envisioned by *Camp II*, the sole issue for the jury is whether St. Paul breached the duty of good faith owed to Dr. Kimbell. For these reasons, the court concludes there was no error in giving or refusing to give any jury instruction that requires a new trial.

Finally, St. Paul argues that a variety of errors were made in the admission into evidence of an affidavit executed by Dr. Kimbell in 1989. The affidavit was attached to a deposition and admitted under Rule 32(a)(3) of the Federal Rules of Civil Procedure. The affidavit contained statements suggesting that St. Paul ignored Frank Bozeman's recommendations to settle Mrs. Camp's claim, did not adequately advise Dr. Kimbell of the difficulties of the suit, and did not act in Dr. Kimbell's best interest in refusing to settle the claim. St. Paul believes the affidavit violated Rule 611(c) of the Federal Rules of Evidence because, "Plaintiff's counsel actually wrote the affidavit" and thus, it "permitted Plaintiff to use unacceptable leading questions on direct examination."

The court rejects St. Paul's arguments. The affidavit was properly admitted along with portions of Dr. Kimbell's deposition testimony. The deposition testimony also contained portions wherein Dr. Kimbell was cross-examined at length regarding the facts stated in the affidavit. St. Paul declined to introduce those portions of the deposition reflecting that cross-examination. The court rejects St. Paul's remaining contentions and concludes that no unfair prejudice resulted.

### III. *Motion to Alter or Amend Judgment*

A motion to alter or amend judgment, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, may be granted on one of three general grounds: "An intervening change in controlling law, the availability of new evidence, and the need to correct clear error or prevent manifest injustice." *Estate of Pidcock v. Sunnyland America, Inc.,* 726 F.Supp. 1322, 1333 (S.D.Ga.1989); *see also Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss.1990). There were no errors here that this court is empowered to correct.

In support of its motion, St. Paul again argues that there are manifest errors of law and fact because the awarded damages of $2,784,942.66 do not accurately reflect the actual damage to the bankruptcy estate of $0.00. Again, the court agrees with St. Paul that there was no damage to the bankruptcy estate. However, the court is constrained by the opinion in *Camp II,* 616 So.2d at 12. St. Paul is not entitled to alter or amend the judgment.

### IV. *Conclusion*

The court finds the result of this case illogical and unfair. Unfortunately, this court is powerless to order any other result. A District Court acting under an appellate mandate "cannot vary it, or examine it for any purpose other than execution...." *Litman v. Massachusetts Mut. Life Ins. Co.,* 825 F.2d 1506, 1510–11 (11th Cir.1987) (*en banc*). The Eleventh Circuit mandated this court to follow *Camp II,* and this court has attempted to do so.

Accordingly, it is regretfully **ORDERED** that,

1. Defendant's Motion for Judgment as a Matter of Law is **DENIED.**

2. Defendant's Motion for New Trial is **DENIED.**

3. Defendant's Motion to Alter or Amend Judgment is **DENIED.**